[No. F054590. Fifth Dist. Nov. 20, 2008.]

ARTESIA DAIRY, Petitioner, v.
AGRICULTURAL LABOR RELATIONS BOARD, Respondent;
UNITED FARM WORKERS OF AMERICA, Real Party in Interest.

## Counsel

Sagaser, Jones & Helsley, Howard A. Sagaser and David W. Burnett for Petitioner.

J. Antonio Barbosa and Joseph A. Wender for Respondent.

Marcos Camacho and Mario Martinez for Real Party in Interest.

## Opinion

LEVY, J.—The Agricultural Labor Relations Board (ALRB) ruled that certain persons employed by Artesia Dairy (Artesia) were not eligible to vote on the United Farm Workers of America's (UFW) petition to represent Artesia's agricultural employees. (*Artesia Dairy* (2007) 33 ALRB No. 3.) Following this decision, the UFW was certified as the exclusive bargaining representative of Artesia's agricultural employees by a 27-to-25 vote.

However, Artesia had no right to obtain immediate judicial review of the ALRB's decision certifying the UFW. Rather, an employer can obtain judicial review only after it has been found guilty of an unfair labor practice in refusing to bargain with the union. (*J. R. Norton Co. v. Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1, 10 [160 Cal.Rptr. 710, 603 P.2d 1306].) Accordingly, consistent with the procedure outlined in *J. R. Norton Co. v. Agricultural Labor Relations Bd.*, Artesia engaged in a "technical" refusal to bargain and generated an unfair labor practice decision that is reviewable under Labor Code[1] section 1160.8. (*Artesia Dairy* (2007) 33 ALRB No. 6.) Through review of this decision, in which the ALRB reaffirmed its decision in 33 ALRB No. 3, this court may review the election. (*J. R. Norton Co. v. Agricultural Labor Relations Bd., supra*, 26 Cal.3d at p. 27.)

In its petition for review, Artesia challenges the ALRB's determination that seven employees were ineligible to vote. According to Artesia, the ALRB

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

erroneously concluded that Kevin, Kasey, and Kannen Avila, nephews of Artesia's owners, were ineligible because they were the " 'functional equivalent' " of the owners' children. Artesia also contends that, contrary to the ALRB's conclusion, the landscaping work performed by John Flores was incidental to or in conjunction with the farming operation and therefore constituted agriculture. Artesia further argues that the ALRB incorrectly found that Angelita Pacheco was ineligible to vote because she did not spend a substantial amount of her time engaged in agricultural work. Finally, Artesia disputes the ALRB's determination that Hector Vera and Sergio Rey were supervisors.

As discussed below, the ALRB erred in sustaining the challenges to Kevin, Kasey, and Kannen Avila. These employees do not fall under the regulation that excludes the owner's children from voter eligibility. Accordingly, this court has granted Artesia's petition for review and will reverse this aspect of the ALRB's decision and order. However, both the law and substantial evidence support the ALRB's rulings on the remaining challenged ballots.

## BACKGROUND

This case began with the UFW filing a petition for certification in February 2006. Agricultural employees of Artesia were eligible to vote if they worked during the period of February 13, 2006, to February 26, 2006. The election was held on March 7, 2006, with the initial ballot tally showing 25 votes for the UFW, 24 votes for "No Union," and 15 unresolved challenged ballots. In an earlier ALRB decision, two challenges were sustained and one was overruled. (*Artesia Dairy* (2006) 32 ALRB No. 3.) An evidentiary hearing was set for the 12 remaining challenges.

During the hearing, the parties stipulated that two employees were supervisors whose challenges should be sustained. Thereafter, the investigative hearing examiner (IHE) issued his decision on the remaining challenges. The IHE recommended that one challenge be sustained but that the remaining nine challenges be overruled. Artesia filed an exception to the overruling of the challenge to Jesus Mesa Martinez and the UFW filed exceptions to the overruling of the other eight challenges.

In *Artesia Dairy*, *supra*, 33 ALRB No. 3, the ALRB affirmed the IHE's recommendation to overrule the challenge to Jesus Mesa Martinez finding that he would have worked but for his work-related injury. The ALRB also affirmed the overruling of the challenge to Rosa Pacheco finding that she performed a regular and substantial amount of her work for Artesia's farming operation. However, the ALRB overturned the IHE's recommendations on the

remaining seven employees and sustained the challenges to their ballots. The voting eligibility of these seven employees is the subject of the petition for review.

Based on a revised tally of ballots showing 27 votes for the UFW and 25 votes for "No Union," the ALRB certified the UFW as the exclusive bargaining representative of the Artesia agricultural employees. Artesia then engaged in the technical refusal to bargain in order to seek judicial review of the underlying ALRB decision. That resulted in the decision in 33 ALRB No. 6, in which the ALRB found no basis for reconsidering its decision in 33 ALRB No. 3. Although Artesia offered additional evidence regarding the eligibility of John Flores, the ALRB found the evidence was unpersuasive and not "newly discovered." Nevertheless, the ALRB concluded the case posed several legal issues requiring a clarification or extension of existing law. Accordingly, the ALRB found this was not an appropriate case for awarding the bargaining make-whole remedy pursuant to section 1160.3, i.e., giving employees the salary differential between what they were actually earning and what they would have earned in wages and fringe benefits under a contract resulting from good faith bargaining between their employer and their union.

## DISCUSSION

1. *Standard of review.*

Section 1160.8 provides that, on review, the ALRB's findings of fact shall be conclusive "if supported by substantial evidence on the record considered as a whole." This standard of review is met if the record contains relevant evidence that a reasonable mind might accept in support of the findings. (*Carl Joseph Maggio, Inc. v. Agricultural Labor Relations Bd.* (1984) 154 Cal.App.3d 40, 54 [201 Cal.Rptr. 30].) Accordingly, the reviewing court does not reweigh the evidence. If there is a plausible basis for the ALRB's factual decisions, the court is not concerned that contrary findings may seem equally reasonable, or even more so. (*Vessey & Co. v. Agricultural Labor Relations Bd.* (1989) 210 Cal.App.3d 629, 642 [259 Cal.Rptr. 77].) Witness credibility, for example, is particularly for the ALRB's determination. Accordingly, such evidence is not reviewable by the court unless the testimony is incredible on its face or inherently improbable. (*Bertuccio v. Agricultural Labor Relations Bd.* (1988) 202 Cal.App.3d 1369, 1386 [249 Cal.Rptr. 473].) However, substantial evidence is not established by any evidence, i.e., the evidence must be of ponderable legal significance. (*Vessey & Co. v. Agricultural Labor Relations Bd., supra,* 210 Cal.App.3d at p. 642; *Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633 [29 Cal.Rptr.2d 191].)

In contrast, ALRB decisions that rest on erroneous legal foundations will be set aside. (*Vessey & Co. v. Agricultural Labor Relations Bd., supra*, 210 Cal.App.3d at p. 643.) However, the ALRB's interpretation of its own regulations is entitled to deference. (*Tex-Cal Land Management, Inc. v. Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 353 [156 Cal.Rptr. 1, 595 P.2d 579].) Further, as the agency entrusted with the enforcement of the Alatorre-Zenovich-Dunlap-Berman Agricultural Labor Relations Act of 1975 (ALRA) (§ 1140 et seq.), the ALRB's interpretation of this act "is to be accorded 'great respect by the courts and will be followed if not clearly erroneous.'" (*San Diego Nursery Co. v. Agricultural Labor Relations Bd.* (1979) 100 Cal.App.3d 128, 140 [160 Cal.Rptr. 822].)

■ Under section 1148, the ALRB must follow all applicable precedents of the National Labor Relations Act (NLRA; 29 U.S.C. § 151 et seq.). Thus, when reviewing ALRB orders, this court is also guided by decisions under the NLRA. (*Vessey & Co. v. Agricultural Labor Relations Bd., supra*, 210 Cal.App.3d at p. 643.)

2. *Kevin, Kasey, and Kannen Avila did not fall under the California Code of Regulations, title 8, section 20352, subdivision (b)(5) exclusion from voter eligibility.*

Hans and Roxanne Reitsma are the owners of Artesia. Kevin, Kasey, and Kannen Avila are their nephews. During the eligibility period and election, the Avila brothers were living with the Reitsmas and helped out around the dairy after school and on weekends. The brothers had been placed in the Reitsmas' home by Child Protective Services. Hans Reitsma testified that he understood the arrangement to be foster care and that he and his wife would best be described as foster parents. Hans Reitsma viewed it as his responsibility to feed and clothe the boys and provide them a home. At the time of the IHE hearing, the boys were living with their grandparents.

California Code of Regulations, title 8, section 20352, subdivision (b)(5) (Regulation 20352(b)(5)), provides that the "parent, child, or spouse of the employer" is ineligible to vote. In *Pete Vanderham Dairy, Inc.* (2002) 28 ALRB No. 1, the ALRB explained that this regulation "embodies the unremarkable proposition that the children of the employer are so closely and inherently aligned with the interests of management, like managers and supervisors, that they cannot be considered employees for collective bargaining purposes." (28 ALRB No. 1, p. 2.)

The ALRB found that Kevin, Kasey, and Kannen were agricultural employees during the eligibility period. While the ALRB noted that the familial exclusions set forth in Regulation 20352(b)(5) stand as narrow exceptions

that it has consistently refused to expand, the ALRB nevertheless concluded that the boys were ineligible to vote under the child exclusion. The ALRB determined that, while placed with the Reitsmas as foster children, the boys "were integrated into the family and treated no differently than the [Reitsmas'] natural children. They were completely dependent on the Reitsmas for food, shelter, and clothing and were aware that their uncle did not want the union to win the election." The ALRB considered the Avila brothers as the "functional equivalent" of the employer's children and sustained the challenges to their ballots.

Artesia contends the ALRB erred by expanding the scope of Regulation 20352(b)(5) to include foster children. According to Artesia, this expansion is inconsistent with both the ALRB's duty to apply exclusions narrowly and the ALRB's prior decision in *Bunden Nursery, Inc.* (1988) 14 ALRB No. 18.

■ Section 1156.2 requires every bargaining unit to include "all the agricultural employees of an employer." No family-based exclusion from the definition of "agricultural employee" is contained in the ALRA. Thus, employer family members who fall within the ALRA's definition of "agricultural employee" are presumptively entitled to vote. (*Bunden Nursery, Inc., supra*, 14 ALRB No. 18.) The only exclusion is for the closest relatives of the employer, i.e., parent, child and spouse. (Regulation 20352(b)(5).) Accordingly, in *Bunden Nursery, Inc.*, the ALRB determined that the employer's five minor grandchildren who lived with the employer in an extended family household were eligible to vote. The ALRB noted that although their parents, as children of the company's sole shareholders, were ineligible to vote, the five grandchildren did not fall within the plainly defined ineligible category. In other words, "child" is not equivalent to "grandchild."

Similarly here, the Reitsmas' three nephews do not fall within the plainly defined ineligible category of "child." Regulation 20352(b)(5) excludes the "child" of the employer, not the amorphous "child equivalent." Under the ALRB's interpretation, any minor agricultural employee living with the employer during the eligibility period for whatever reason could be ruled ineligible to vote as a child equivalent. This is an expansion of the scope of a plainly defined category. Accordingly, the ALRB's conclusion that Regulation 20352(b)(5) encompasses the "functional equivalent" of a child is invalid. (*J. R. Norton Co. v. Agricultural Labor Relations Bd., supra*, 26 Cal.3d at p. 29.) As with the grandchildren living with the employer in *Bunden Nursery, Inc.*, the Reitsmas' nephews, Kevin, Kasey, and Kannen Avila, were eligible to vote.

3. *Based on the evidence presented, the ALRB correctly concluded that John Flores was not an agricultural employee.*

During the voter eligibility period, John Flores was employed by the Reitsmas to maintain the lawn area around the dairy and the Reitsmas' home. Flores worked approximately 28 to 30 hours per week mowing the lawns, removing weeds, and maintaining the sprinklers, with the majority of his time spent on the lawn in front of the dairy. Occasionally, Flores would reset cypress trees that had been knocked down by the wind. These trees were located beside the roadways on the dairy property. Flores would also do other types of gardening around the Reitsmas' home, such as planting flowers and fertilizing.

In 33 ALRB No. 3, the ALRB found no evidence in the record indicating that the lawn area served any operational purpose relative to actual dairy operations. Rather, the record indicated the lawn was purely for decorative purposes. Based on this record, the ALRB concluded that Flores was not an agricultural employee. Although performed on dairy property, the ALRB found that Flores's work had no connection to the farming operation.

Following Artesia's technical refusal to bargain, Artesia asked the ALRB to reconsider its decision in 33 ALRB No. 3 and offered "new evidence" regarding Flores's eligibility. Artesia presented San Joaquin Valley Unified Air Pollution Control Board rules as exhibits purporting to show that the lawn area was used to control dust on the dairy pursuant to air pollution control requirements. The ALRB noted that the exhibits failed to reflect whether compliance with air pollution mitigation requirements was the purpose of the lawn area. In any event, the ALRB refused to consider this evidence because it was not newly discovered in that the exhibits were available to Artesia prior to the representation hearing. (*Artesia Dairy, supra,* 33 ALRB No. 6.)

Artesia contends the ALRB misinterpreted section 1140.4, subdivision (b), in finding Flores was not performing work as an incident to or in conjunction with the agricultural work at the dairy. According to Artesia, the maintenance of the grassy area was part of the dust control required by the San Joaquin Valley Unified Air Pollution Control District for dairies. Artesia further argues that Flores must be found to be an agricultural employee under *George Lucas & Sons* (1977) 3 ALRB No. 5.

Section 1140.4, subdivision (a), defines agriculture, in part, as including "farming in all its branches, and, among other things, includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities . . .

and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations . . . ." The term "agricultural employee" means one engaged in agriculture as defined above. (§ 1140.4, subd. (b).) However, the ALRB can only assert jurisdiction over workers who are excluded from the coverage of the NLRA as agricultural employees. (§ 1140.4, subd. (b).)

The ALRA definition of "agriculture" is identical to section 203(f) of the Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. § 203(f)), and the ALRB is required to conform to this FLSA section in defining "agricultural employee." (§ 1140.4, subd. (b).) The FLSA definition is the one Congress has annually instructed the National Labor Relations Board (NLRB) to use for purposes of the NLRA exclusion of individuals employed as agricultural laborers. (*Holly Farms Corp. v. NLRB* (1996) 517 U.S. 392, 397 [134 L.Ed.2d 593, 116 S.Ct. 1396].)

The United States Supreme Court has explained that the FLSA definition of agriculture " 'includes farming in both a primary and a secondary sense.' " (*Holly Farms Corp. v. NLRB, supra*, 517 U.S. at p. 398.) "Primary farming" includes the occupations listed first, i.e., " 'the cultivation and tillage of the soil, dairying,' " etc. (*Ibid.*) However, "secondary farming" has a broader meaning. It encompasses any practices, whether or not themselves farming practices, that are performed either by a farmer or on a farm, as an incident to or in conjunction with such farming operations. (*Ibid.*)

The Code of Federal Regulations expands on this secondary agriculture concept. Title 29, section 780.144 (2008) provides that, in order for practices other than actual farming operations to constitute "agriculture," it is not enough that they be performed by a farmer or on a farm. "They must also be performed 'as an incident to or in conjunction with' these farming operations." This line is not susceptible of precise definition. "Generally, a practice performed in connection with farming operations is within the statutory language only if it constitutes an established part of agriculture, is subordinate to the farming operations involved, and does not amount to an independent business." (29 C.F.R. § 780.144.) Examples of other practices that fall within secondary agriculture are office work and maintenance and protective work. Thus, agricultural employees include "secretaries, clerks, bookkeepers, night watchmen, maintenance workers, engineers, and others who are employed by a farmer or on a farm if their work is part of the agricultural activity and is subordinate to the farming operations of such farmer or on such farm." (29 C.F.R. § 780.158(a) (2008).)

There is no dispute that, if maintaining the lawn on the dairy were to be considered agricultural work, it would constitute secondary agriculture. Further, this gardening activity is not secondary agriculture merely because it

took place on the dairy. Rather, for Flores to be considered an agricultural employee, he must have performed the lawn maintenance as an incident to or in conjunction with the dairy operations.

As noted above, the ALRB concluded in 33 ALRB No. 3 that the lawn area in front of the dairy was purely for decorative purposes. There is no evidence in the hearing record indicating otherwise. Accordingly, there is a reasonable basis for this factual decision and it is binding on this court. (*Vessey & Co. v. Agricultural Labor Relations Bd., supra*, 210 Cal.App.3d at p. 642.) Being as the lawn was merely decorative landscape, the ALRB correctly concluded that Flores's maintenance of that lawn was not part of the agricultural activity. Therefore, Flores was not an agricultural employee.

Artesia attempts to rely on the San Joaquin Valley Unified Air Pollution Control District's rules that require dairies to control dust on dairy property as proof that Flores performed his work as an incident to or in conjunction with the dairy operations. As noted above, Artesia presented these rules as exhibits following its technical refusal to bargain. However, the ALRB noted that Artesia's exhibits failed to reflect whether air pollution mitigation was in fact the purpose of the lawn area. Moreover, this evidence was rejected by the ALRB as untimely and thus was not admitted into the record. Thus, on the dust control argument, there was a failure of proof.

Artesia further argues that the ALRB decision in *George Lucas & Sons, supra*, 3 ALRB No. 5, requires that Flores be found eligible to vote. According to Artesia, that decision held that a gardener is an agricultural employee unless he works solely at the owner's home. However, Artesia has misconstrued this decision. The ALRB in *George Lucas & Sons* did not make a definitive finding. Rather, the ALRB held there was a factual dispute that required a further investigation or hearing into the gardener's status and there was no subsequent decision addressing the issue. Thus, there is no prior decision on the situation present here.

4. *It was appropriate for the ALRB to apply a substantiality test in determining whether Angelita Pacheco was an agricultural employee.*

Angelita Pacheco was employed by the Reitsmas to take care of the children and assist with housekeeping in the Reitsmas' home. However, Angelita spent some of her time assisting another domestic employee, Rosa Pacheco, in cleaning the offices, restrooms, and break room at the dairy. There is no dispute that the cleaning at the dairy constituted secondary agriculture. None of the work performed by Angelita was covered by the NLRA.

Angelita worked 25 hours per week for the Reitsmas. However, the number of hours that Angelita spent cleaning the dairy varied. Angelita

testified that she did not work at the dairy every week or even every month. The ALRB reconciled the conflicting testimony and concluded that, during the eligibility period, Angelita worked for a maximum of four hours at the dairy out of her 25 hours per week, or at most spent 16 percent of her time engaged in secondary agriculture. Artesia does not dispute this factual finding.

The ALRB noted that Angelita performed "mixed work" for one employer, i.e., both nonagricultural and agricultural work. The ALRB considered the amount of time that Angelita spent engaged in agricultural work and concluded that it would not assert jurisdiction over Angelita because the small proportion of agricultural work was not substantial. In other words, the ALRB determined that Angelita did not meet the threshold requirement for being an "agricultural employee."

■ As noted above, individuals employed as agricultural laborers are excluded from the protection of the NLRA. However, in the situation where an employee performs both nonexempt work, i.e., work covered by the NLRA, and agricultural work, the NLRB will assert jurisdiction over the nonexempt work if it is a regular amount, in the case of employees engaged in secondary agriculture, or if it is a substantial amount, in the case of employees engaged in primary agriculture. (*Olaa Sugar Co., Ltd.* (1957) 118 NLRB 1442; *Bud of California* (1993) 311 NLRB 1352.) On the other hand, if the proportion of nonexempt work is relatively minimal, NLRB jurisdiction will not lie. (*N. L. R. B. v. Kelly Brothers Nurseries, Inc.* (2d Cir. 1965) 341 F.2d 433, 439.) In *Kelly Brothers Nurseries, Inc.*, the proportion of nonexempt work was 14 percent or less. In that situation, the court concluded that "[s]uch small proportions are inadequate to tip the scales in favor of bringing these men, who would be regarded as farmers on any realistic view, within the National Labor Relations Act." (*Ibid.*)

When faced with a "mixed work" situation, i.e., an employee working for a single employer spends only a portion of his or her time engaged in agriculture, the ALRB has consistently applied the substantiality test in determining whether it has jurisdiction. (*Royal Packing Company* (1994) 20 ALRB No. 14; *William Warmerdam* (1998) 24 ALRB No. 2; *Associated-Tagline, Inc.* (1999) 25 ALRB No. 6.) Unlike the situation here, *Royal Packing Company, William Warmerdam* and *Associated-Tagline, Inc.* involved agricultural work and work subject to NLRB jurisdiction. However, in *Sutter Mutual Water Company* (2005) 31 ALRB No. 4, the employees were excluded from coverage of the NLRA. Thus, the limitation imposed by section 1140.4, subdivision (b), that the ALRB can only assert jurisdiction over workers who are excluded by the NLRA, was not an obstacle to the ALRB's assertion of jurisdiction. Nevertheless, the ALRB concluded that it still must determine

whether the workers in question were agricultural employees as defined in the ALRA. To do so, the ALRB decided it must evaluate whether the employees were engaged in agricultural work for a substantial amount of time. As noted above, the ALRB similarly applied the substantiality test in this case.

Artesia contends that both here and in *Sutter Mutual Water Company*, the ALRB erred in applying the substantiality test. According to Artesia, the percentage system used to exclude Angelita Pacheco is not consistent with the ALRA's requirement that all agricultural employees be included. Artesia points out that under the ALRA an employee need only have worked "even less than one day" during the eligibility period to be eligible to vote, whereas under the NLRA an employee must be continually employed from the eligibility period until the election is held.

However, this distinction between the ALRA and the NLRA is not dispositive. Rather, the issue is whether someone in Angelita's position, i.e., a primarily domestic employee who occasionally performs secondary agricultural work for the same employer, falls within the definition of "agricultural employee."

By applying the substantiality test, the ALRB has interpreted the ALRA as requiring an employee in a mixed work situation to engage in more than sporadic or minimal agricultural work before that employee will be considered an "agricultural employee." This interpretation is reasonable. Otherwise, the ALRB would be required to assert jurisdiction over a nonagricultural employee based on a de minimis amount of agricultural work. Consequently, the ALRB's adoption of the substantiality test in determining whether Angelita Pacheco was an agricultural employee will be upheld. (Cf. *San Diego Nursery Co. v. Agricultural Labor Relations Bd., supra*, 100 Cal.App.3d at p. 140.)

5. *Substantial evidence supports the ALRB's conclusion that Hector Vera and Sergio Rey were supervisors.*

■ California Code of Regulations, title 8, section 20355, subdivision (a)(1), provides that a supervisor is ineligible to vote. The purpose of this provision is to exclude individuals whose fundamental alignment is with management. (Cf. *Oakwood Healthcare, Inc.* (2006) 348 NLRB No. 37.)

■ The ALRA defines a supervisor as "any individual having the authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or the responsibility to direct them, or to adjust their grievances, or effectively to

recommend such action, if, in connection with the foregoing, the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." (§ 1140.4, subd. (j).) If the individual has authority to exercise, or effectively recommend the exercise of, at least one of the above functions, supervisory status exists, provided that the authority is held in the interest of the employer and is exercised neither routinely nor in a clerical fashion but with independent judgment. (*Oakwood Healthcare, Inc., supra*, 348 NLRB No. 37.) The ALRA definition of supervisor is nearly identical to that contained in section 2(11) of the NLRA. Accordingly, NLRB precedent is applicable.

An individual may have supervisory status when engaged only part time as a supervisor if the individual spends a regular and substantial portion of his or her work time performing supervisory functions. (*Oakwood Healthcare, Inc., supra*, 348 NLRB No. 37.) Under the NLRB's standard, "regular" means according to a pattern or schedule, as opposed to sporadic substitution. Although the NLRB has not adopted a strict numerical definition of substantiality, it has found supervisory status where the individuals have served in a supervisory role for at least 10 to 15 percent of their total work time. (*Ibid.*)

### a. *Hector Vera*

Hector Vera's primary duties involved inseminating cows and checking cows for pregnancy. He worked six days a week and was paid an annual salary of $60,000.

Marvin Machado was in charge of the day-to-day dairy operations. Hector's brother, Victor Vera, was Machado's assistant. Whenever Machado was not present, Victor could act in his place. The parties agreed that Victor's activities as Machado's assistant made him a supervisor.

Several employees stated that Hector Vera acted as Victor Vera's substitute one day a week when Victor was off. Machado acknowledged that this was the case and testified he told the other employees that Hector was in charge when Victor had a day off. Machado explained to the employees that they had to listen to Hector and were to go to him in case of any problems.

Based on Hector's having taken on Victor's supervisory duties one day a week, the ALRB concluded he was a part-time supervisor and therefore ineligible to vote. The ALRB found that Hector's supervisory duties were regular, i.e., once a week, and that, because those duties occupied 16.7 percent of Hector's total work time, they were substantial.

Artesia argues the ALRB erred in categorizing Hector Vera as a supervisor. According to Artesia, substantial evidence does not support the ALRB's

conclusion that Hector was a supervisor 16.7 percent of the time. Artesia further asserts that the ALRB incorrectly applied NLRB precedent on part-time supervisors.

■ Contrary to Artesia's position, the record supports the ALRB's findings. It was undisputed that Victor was a supervisor. It was also undisputed that Hector took over Victor's position one day a week. Accordingly, Hector had supervisory authority one day out of his six-day work week or 16.7 percent of his time. Evidence that Hector in fact exercised that authority was not necessary. Whether an individual is an employee or a supervisor is determined by the existence of supervisory authority, not the exercise of that authority. (*Famous Amos Chocolate Chip Cookie Corp.* (1978) 236 NLRB 1093.)

Moreover, under NLRB precedent, 16.7 percent of an individual's total work time as a supervisor is sufficient to find supervisory status. (*Oakwood Healthcare, Inc., supra,* 348 NLRB No. 37.) Both the ALRB and this court are to follow all applicable precedents under the NLRA. (§ 1148; *Vessey & Co. v. Agricultural Labor Relations Bd., supra,* 210 Cal.App.3d at p. 643.) Accordingly, the ALRB's finding that Hector Vera was a supervisor will be upheld.

b. *Sergio Rey*

Rey started working at Artesia as a maintenance worker in January 2006, less than two months before the election. His job included maintaining the machinery, tractors, and corrals. Rey was paid a salary of $50,000 per year.

In Rey's challenged ballot declaration, he stated that he was in charge of the other maintenance supervisors, he was their supervisor, he sometimes reviewed their work, and Machado told him that he would be a supervisor when he was hired. Rey also stated that he would show new employees what to do. However, at the hearing he denied having any supervisory authority. Rather, Rey testified that Machado gave him a list of assignments every day and they worked together to prioritize each job.

Reitsma and Machado also denied that Rey had any supervisory authority. According to Reitsma and Machado, the duties of the other maintenance workers were routine and did not require regular direction. Nevertheless, Machado characterized Rey as "basically my Victor [supervisor Victor Vera] on the outside . . . he is my extension for the maintenance on corrals." Machado also stated that other employees go directly to Rey for equipment problems and for certain assignments, though not on a daily basis.

Employee witnesses testified they believed that Rey was a supervisor. According to these witnesses, Rey told them what to do. For example, Rey

would order an employee to scrape a certain corral, to remove a dead cow, or to move pumps and trailers.

Rey also initiated the transfer of an employee from one position to another. The ALRB noted that it was not clear whether Rey had the authority to make the transfer decision himself. Nevertheless, at a minimum, Rey effectively recommended the transfer.

The ALRB found that the evidence regarding Rey's status posed a close question. Since there were multiple conflicts, the ALRB was required to decide which evidence it found more credible.

In evaluating the evidence, the ALRB concluded that Rey's ballot declaration was more credible than his blanket denial and therefore considered the declaration as evidence for the truth of the matter asserted. Since the ballot declaration was not incredible or inherently improbable, this credibility determination will not be disturbed. (*Vessey & Co. v. Agricultural Labor Relations Bd.*, *supra*, 210 Cal.App.3d at p. 642.)

■ In making its ruling, the ALRB considered both primary and secondary indicia of supervisory authority. The actions listed in section 1140.4, subdivision (j), such as hiring, firing, and assigning work, etc., are considered primary. Secondary indicia include such factors as salary level and whether the individual or others consider that individual to be a supervisor. However, secondary indicia should not be considered in the absence of at least one statutory characteristic of supervisory status. (*Pacific Beach Corp.* (2005) 344 NLRB 1160.)

The ALRB determined the evidence reflected that Rey instructed the outside workers, at least to the extent of directing the order of the tasks to be accomplished and by whom among the outside employees. The ALRB also credited Rey's statement in his challenged ballot declaration that he sometimes reviewed the work of other outside employees. Further, while Machado testified that everybody knew their jobs and performed them routinely, the ALRB noted that Machado admitted that the workers would go to Rey regarding some assignments. Based on these findings, and the testimony that on one occasion Rey effectively recommended the transfer of an employee, the ALRB concluded there was sufficient evidence of primary indicia of supervisory authority, bolstered by strong secondary indicia, to conclude that Rey was a statutory supervisor and therefore ineligible to vote.

Artesia contends there was no substantial evidence supporting the ALRB's finding that Rey was a supervisor. Artesia argues the ALRB's conclusion that Rey had the responsibility to direct other employees cannot stand because

there is no evidence that Rey was accountable for the actions of the employees he directed or that he exercised independent judgment in giving those directions.

■ The term "responsibility to direct" was added to the enumerated supervisory functions to ensure "statutory supervisor" encompassed those individuals who exercise basic supervision but lack the authority or opportunity to carry out any of the other statutory supervisory functions such as hiring, firing and disciplining. (*Oakwood Healthcare, Inc., supra*, 348 NLRB No. 37.) Thus, if a person decides what job shall be undertaken next or who shall do it, that person is a supervisor, provided that the direction is both "responsible" and carried out with independent judgment. (*Ibid.*) For the direction to be responsible, the person directing and performing the oversight of the employee must be accountable for the performance of the task by the other with the possibility of adverse consequences if the task is not performed properly. To be independent, the judgment must involve a degree of discretion that rises above the routine or clerical. (*Ibid.*)

Based on the finding that Rey reviewed the work of other employees, the ALRB could have reasonably inferred that Rey would have been held accountable for not taking action to correct a reviewed employee's deficient performance. Further, the fact that Rey was sought out by other employees to solve problems indicates he possessed a degree of discretion above the routine or clerical. Moreover, responsibility to direct was not the only primary indication of supervisory status relied on by the ALRB. The ALRB also found that, at a minimum, Rey effectively recommended the transfer of an employee.

Additionally, the primary indicia of supervisory authority were supplemented with strong secondary indicia. Both Rey and other workers considered Rey to be a supervisor. Further, Rey was one of a very few salaried employees. Being paid a straight salary is a circumstance that does not establish, but is an indication of, supervisory status. (*Babbitt Engineering & Machinery v. Agricultural Labor Relations Bd.* (1984) 152 Cal.App.3d 310, 327 [199 Cal.Rptr. 445].)

This court does not reweigh the evidence. If there is a plausible basis for the ALRB's factual decisions, it is of no consequence that contrary findings may seem equally reasonable or even more so. (*Rivcom Corp. v. Agricultural Labor Relations Bd.* (1983) 34 Cal.3d 743, 756–757 [195 Cal.Rptr. 651, 670 P.2d 305].) In light of this standard, the ALRB's determination that Rey was a statutory supervisor will be upheld.

## DISPOSITION

The ALRB's decision excluding the ballots of Kevin Avila, Kasey Avila, and Kannen Avila is reversed. Those ballots are to be counted. The decision excluding the ballots of John Flores, Angelita Pacheco, Hector Vera, and Sergio Rey is affirmed. The decision and order on the technical refusal to bargain is annulled. The parties shall bear their own costs on review.

Wiseman, Acting P. J., and Hill, J., concurred.

A petition for a rehearing was denied December 16, 2008.