[Civ. No. 3426. Fifth Dist. July 29, 1977.]

UNITED FARM WORKERS OF AMERICA, AFL-CIO, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
MOUNT ARBOR NURSERIES et al., Real Parties in Interest.

**COUNSEL**

Jerome Cohen, Sanford N. Nathan, W. Daniel Boone, Glenn Rothner, E. Michael Heumann II, Tom Dalzell and Linton Joaquin for Petitioner.

Harry J. Delizonna, Dennis M. Sullivan and Manuel M. Medeiros as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Thomas, Snell, Jamison, Russell, Williamson & Asperger, Jay V. Jory, Howard A. Sagaser and Nickolas J. Dibiaso for Real Parties in Interest.

## Opinion

**HOPPER, J.—■** In this case we are called upon to determine whether the superior court has jurisdiction to entertain an action for declaratory relief as to bargaining rights of agricultural employers and agricultural employees. We conclude that the Agricultural Labor Relations Board[1] has exclusive jurisdiction and that the superior court may not entertain such an action.

Real parties grow roses and employ farm workers in their operations. In November 1975, petitioner (herein UFW) won elections held under the Act with respect to employees of real parties. On December 3, 1975, the UFW was certified by the Board as the bargaining representative for real parties' employees. No collective bargaining agreement has been entered into between the UFW and real parties.

Prior to the expiration of 12 months following certification, the UFW requested extension of its certification. That request (as was a subsequent one for reconsideration) was denied. By a letter received by real parties February 3, 1977, the UFW demanded that real parties bargain with it. No response was made to that demand. On February 4, 1977, real parties filed in the Superior Court of Kern County the complaint for declaratory relief which is the subject of this dispute. That complaint sought a declaratory judgment informing real parties as to their obligation with regard to the UFW. On March 10, 1977, the UFW demurred to the complaint, alleging failure to plead exhaustion of all remedies open to real parties, lack of jurisdiction of the court, and defect or nonjoinder of parties in that the Board was not joined. On March 28, 1977, the Board issued a decision in the unrelated case of *Kaplan's Fruit & Produce Company, Inc.* (1977) 3 ALRB No. 28. In this case the Board addressed the issue raised in the present case, and ruled that the employer's duty to bargain does not expire at the end of a year's time, holding that the employer must continue to bargain with the union until the employees elect to the contrary. A copy of this opinion was provided to the trial court at the hearing on the UFW's demurrer. On April 4, 1977, respondent court overruled the demurrer. On April 20 the UFW filed the instant petition for writ of prohibition and/or mandamus, alleging that respondent court has determined that it has jurisdiction to hear the action, that it will do so unless restrained by this court, and that it has no jurisdiction to do so.

---

[1]Herein "Board" refers to the Agricultural Labor Relations Board. "Act" refers to the Agricultural Labor Relations Act (Lab. Code, § 1140 et seq.). All references to codes refer to the Labor Code unless otherwise stated.

Prior to the filing of real parties' petition in superior court, on October 22, 1976, the UFW had filed unfair labor practice charges with the Board, alleging that real parties had violated their duty to bargain in good faith. These charges related to events occurring before the expiration of the one-year period alluded to above. On April 29, 1977, the Board served real parties with complaints alleging that the latter were engaged in an unfair labor practice by refusing to bargain with the UFW. Subsequently, the charges against real parties have apparently been expanded.

The UFW and the Board[2] contend that the superior court's jurisdiction to entertain the petition for declaratory relief has been preempted by the Act. The Act was an attempt to apply the basic concepts embodied in the National Labor Relations Act (herein NLRA) to farm labor disputes in California. Much of the Act is copied verbatim from the NLRA, and the Act goes so far as to provide that the Board must follow applicable NLRA precedent (Lab. Code, § 1148). The basic method of dispute resolution accompanied by appellate review embodied in the statutory schemes of both the NLRA and the ALRA is the unfair labor practice proceeding (Lab. Code, § 1160 *ff.*). This procedure not only provides a means by which the Board may resolve allegations that employers and labor organizations have engaged in various practices specified by the Act to be improper (see Lab. Code, §§ 1153 and 1154), but also provides the means by which the employer may challenge the propriety of elections conducted by the Board. If the employer feels that the Board has improperly certified a union as the employees' bargaining representative, its remedy is to refuse to bargain with the union, whereupon the Board will initiate unfair labor practice proceedings against it. At this time the validity of the union's claim to represent the employees may be contested. The Act provides that review of the Board's rulings is by the court of appeal (Lab. Code, § 1160.8).

The court in *Nishikawa Farms, Inc.* v. *Mahony* (1977) 66 Cal.App.3d 781 [136 Cal.Rptr. 233] held that the procedure under the Act could not be circumvented by seeking mandamus in the superior court challenging the Board's orders certifying elections. The same reasoning applies to the facts of this case.

We hold that the Board has exclusive primary jurisdiction over all phases of the administration of the Act as regards unfair labor practices.

---

[2]The Board appears herein as amicus curiae.

Support for this position is found both in the language of the Act (ch. 6) and cases interpreting the NLRA.

The Act provides in section 1166.3, subdivision (b): "If any other act of the Legislature shall conflict with the provisions of this part, this part shall prevail."[3] The Act also provides in section 1160.9: "The procedures set forth in this chapter shall be the exclusive method of redressing unfair labor practices."

Real parties argue that the Board's exclusive jurisdiction only goes to "redressing" unfair labor practices; that in the present case they are not asking the superior court to redress an unfair labor practice; rather, they are requesting it to determine if they have a duty to bargain with the UFW. This contention is fallacious. Whether real parties have a duty to bargain with the UFW is incident under the Act to many possible future unfair labor practices and is inseparable therefrom, much in the same way that an easement appertains to or is tied to a tenement. If every time an incident or condition precedent were involved in an alleged unfair labor practice and any party could first obtain declaratory relief in the superior court instead of from the Board, the Board would be replaced by ad hoc determinations by already overcrowded courts. The legislative effort to bring order and stability to the collective bargaining process would be thwarted. The work of the Board would be effectively impaired, its decisions similar in impression to that of a tinkling triangle practically unnoticed in the triumphant blare of trumpets.

Under the NLRA, the federal district courts do not have jurisdiction to issue declaratory relief in labor-management disputes. (*California Ass'n* v. *Building and Const. Tr. Council* (9th Cir. 1949) 178 F.2d 175; *International Brotherhood, Etc.* v. *International U., Etc.* (9th Cir. 1939) 106 F.2d 871; *Bradley Lumber Co.* v. *National Labor Relations Board* (5th Cir. 1936) 84 F.2d 97.) The United States Supreme Court has not specifically stated that the federal district courts have no jurisdiction to issue declaratory relief. However, that court has made general statements that federal and state courts do not have jurisdiction to involve themselves in matters within the purview of the National Labor Relations Board. As the court stated in *Garner* v. *Teamsters Union* (1953) 346 U.S. 485, 490-491 [98 L.Ed. 228, 239, 74 S.Ct. 161]: "Congress did not

---

[3]This has been interpreted to apply to the Act the general rule of construction that a special statute controls over a general statute. (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 420 [128 Cal.Rptr. 183, 546 P.2d 687].) The Declaratory Judgment Act (Code Civ. Proc., § 1060) is such a general statute.

merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies." (See also *Motor Coach Employees* v. *Lockridge* (1971) 403 U.S. 274 [29 L.Ed.2d 473, 91 S.Ct. 1909].)

We believe that in the Act (containing provisions for appellate review almost identical to the NLRA's) the California Legislature similarly intended to foreclose actions for declaratory relief in the superior court, when the issue could be raised in an unfair labor practice proceeding.

The particular issue sought to be answered in the instant declaratory relief action could not arise under the NLRA. Only the Act prohibits bargaining with other than a "certified" union (§ 1153, subd. (f)). Nor is there any provision in the NLRA similar to section 1155.2, subdivision (b), which provides that the Board may extend union certification for a period of one year. Furthermore, under the NLRA (29 U.S.C. § 159 (c)(1)(B)) the employer would have a direct means of bringing out the issue before the National Labor Relations Board. Nevertheless, the question of jurisdiction remains. Although this particular issue may not arise under the NLRA, if it could, the only way that *judicial* review of the NLRB's determination of that issue could be obtained would be through an unfair labor practice proceeding. Under the Act, the only way *judicial* review of the Board's decisions can be obtained is through an unfair labor practice proceeding. There are limited exceptions. (See *Nishikawa Farms, Inc., supra,* 66 Cal.App.3d at pp. 788-790. The discussion applied therein to certification orders is also appropriate for unfair labor practices.)

Real parties contend the present case falls within the exception of *Leedom* v. *Kyne* (1958) 358 U.S. 184 [3 L.Ed.2d 210, 79 S.Ct. 180]. In *Kyne,* the NLRA conducted an election in a unit containing professional and nonprofessional employees without giving the professionals an opportunity to vote on whether they wished to be included with the nonprofessionals in one unit. This was in direct violation of a portion of

the NLRA (29 U.S.C. § 159 (b) (1)). The NLRA did not contest the fact that it had acted in excess of its powers; it merely challenged the jurisdiction of the federal district court to entertain the suit. The Supreme Court held that in such extraordinary circumstances a petition for direct review was permissible. Real parties contend that *Kyne* stands for the proposition that "trial courts may exercise immediate jurisdiction over cases arising under the National Labor Relations Act when the matter at issue is solely a matter of law and no factual dispute exists."

That is an overstatement of the holding in *Kyne.* As was stated in *Boire* v. *Miami Herald Publishing Co.* (5th Cir. 1965) 343 F.2d 17, 21: "[I]t seems clear that, in light of the congressional purpose behind limited review of certification proceedings, representation matters are enjoinable only where the fact of a statutory violation cannot seriously be argued and where the deviation resulted in a deprivation of a 'right' guaranteed by the Act." (See also *Boire* v. *Greyhound Corp.* (1964) 376 U.S. 473 [11 L.Ed.2d 849, 84 S.Ct. 894]; *McCulloch* v. *Libbey-Owens-Ford Glass Co.* (D.C.Cir. 1968) 403 F.2d 916, 917 [131 App.D.C. 190].)

We cannot say that a statutory violation can be seriously argued in the present case. Nor is there any deprivation of a right guaranteed by the Act. We conclude that the *Kyne* exception does not apply here.

Real parties are correct in asserting that a further exception has been recognized by some courts, i.e., when the constitutional rights of the complaining party have been violated. (*Fay* v. *Douds* (2d Cir. 1949) 172 F.2d 720.) That exception is also limited. There must be a substantial showing that Board action has violated due process or some other constitutional right. Real parties request that the court take judicial notice of the fact that real party Mount Arbor Nurseries charged the UFW with unfair labor practices in its threats of bodily injury and death (as well as union disfavor and economic reprisal) to nonstriking employees, trailing of nonstriking employees from their places of work to their residences, blocking of entrances to work areas, and "residential picketing" of individual employee homes. Notwithstanding the fact that there were employees who testified in support of these allegations, the regional director concluded that there was insufficient evidence to support the charge in light of existing case precedent and First Amendment protections. Real parties also allege harassment and delays by the Board in connection with the unfair labor practice charges presently pending against them. It appears to be real parties' contention

that the Board is so biased against them that it will discriminate against them and therefore should not be allowed to adjudicate this dispute.

However, there were no allegations of bias made by the real parties in the complaint for declaratory relief. The Board was not even named as a party to the litigation. The asserted exception is therefore not applicable. Furthermore, the continued validity of the *Fay* v. *Douds* exception is questionable. (See cases cited in *Moshlak* v. *American Broadcasting Co.* (S.D.N.Y. 1976) 423 F.Supp. 774, 778.)

Real parties claim that they face "irreparable injury" by being subjected to the possibility of an unfair labor practice. We recognize that any party to a labor dispute faces that dilemma of the familiar rock of Scylla and the whirlpool of Charybdis. However, if a party (employer or union) were allowed to bypass the Board and go directly to the court seeking declaratory relief on the ground of irreparable injury, the result would substitute the court for the Board as the exclusive adjudicative body established under the Act. That would fly in the face of the legislative will. (See *Myers* v. *Bethlehem Corp.* (1938) 303 U.S. 41, 50-51 [82 L.Ed. 638, 643-645, 58 S.Ct. 459]. See also *Walker* v. *Munro* (1960) 178 Cal.App.2d 67, 77 [2 Cal.Rptr. 737].)[4] In the absence of arbitrary and clearly unreasonable actions tantamount to gross abuse, pursuant to the legislative mandate the courts should leave the matter in the first instance to the Board—a centralized agency. The Legislature has in effect concluded that the inconvenience of deferring judicial review is a lesser evil than the potential chaos which would be created by permitting initial jurisdiction in the courts. Real parties express a fear that the injury is more irreparable under the Act than under the NLRA, since the Act specifically provides that the Board may order a "make whole" remedy when the employer engages in unfair labor practices. Although the NLRA does not specifically provide for a "make whole" remedy and thus far the NLRB has declined to utilize it, nevertheless several cases have held that this remedy is in fact available to the NLRA (*International Union of E., R. & M. W., AFL-CIO* v. *N.L.R.B.* (D.C. Cir. 1970) 426

[4]Section 1 of Statutes 1975, Third Extraordinary Session, chapter 1, which enacted the Act, says in part: "Sec. 1. In enacting this legislation the people of the State of California seek to ensure peace in the agricultural fields by guaranteeing justice for all agricultural workers and stability in labor relations. [¶] This enactment is intended to bring certainty and a sense of fair play to a presently unstable and potentially volatile condition in the state. The Legislature recognizes that no law in itself resolves social injustice and economic dislocations. [¶] However, in the belief the people affected desire a resolution to this dispute and will make a sincere effort to work through the procedures established in this legislation, it is the hope of the Legislature that farm laborers, farmers, and all the people of California will be served by the provisions of this act."

F.2d 1243, 1248-1249, 1253 [138 App.D.C. 249]; *International Union, U.A., A. & A. Imp. Wkrs.* v. *N.L.R.B.* (D.C. Cir. 1971) 449 F.2d 1046, 1048-1049 [145 App.D.C. 384]). The Board has not used this remedy. Furthermore, use of such a remedy when the employer is acting in good faith may very well be an abuse of discretion.

In *Kaplan's Fruit & Produce Company, Inc., supra,* 3 ALRB No. 28, the Board addressed itself to the precise issue framed in real parties' petition for declaratory relief. It concluded that, although the statutory language is slightly different from that of the NLRA, the rule to be followed is the same—that the duty to bargain with the union does not expire after one year, but rather continues, the union enjoying a rebuttable presumption that its majority representative status continues. Labor Code section 1155.2, subdivision (b), which might be interpreted to compel a different result, is merely a reflection of the rule that after a union has been certified, no new election may be held for one year, and that this period may be extended for an additional year if the Board feels the employer has not bargained in good faith.

Real parties are correct that there is no statutory authority for the Board to write an advisory opinion such as *Kaplan's.*[5] Real parties claim that they did not know what to do and that they were afraid of committing an unfair labor practice. While *Kaplan's* is not binding on the Board or real parties, that ALRB opinion does notify real parties as to how the Board felt at that time the statute was to be interpreted. The Board would be hard pressed to assert the contrary in an unfair labor practice suit so long as *Kaplan's* remained a guideline. After *Kaplan's* was decided, the real parties could no longer logically assert that they were in the dark as to what steps to take to avoid commission of an unfair labor practice. Should real parties disagree with the Board's interpretation, they could request their own hearing on the issue and in the event of a subsequent unfair labor practice proceeding have judicial review under the Act.[6]

In summary, the Legislature, confronted with violence in the fields, sought peace and stability in agricultural relations by adoption of the Act. That Act established a centralized expert agency with a primary jurisdiction over agricultural labor disputes. With limited exceptions not applicable to the facts of this case, the judiciary enters the scene only

[5] However, real parties have not called to our attention any provision prohibiting the issuance of such opinions.

[6] As is stated in the concurring opinion of Presiding Justice Brown, it is important that the Board resolve disputes of this nature with dispatch.

after the Board has passed on a labor relations question, and then only for limited purposes of review.

Let a peremptory writ of mandate issue directing the respondent court to vacate its order overruling the demurrer of petitioner and enter an order sustaining the demurrer, without leave to amend, and dismissing the complaint of real parties.

Gargano, J., concurred.

**BROWN (G. A.), P. J.,** Concurring and Dissenting.—I concur generally in the reasoning and conclusion of the principal opinion. The result is clearly compelled by the statutory scheme and, of course, short of constitutional considerations, which are not involved in the case at bench, this court does not make the law but is bound by what the Legislature has enacted. Therefore, if there is to be a change it must be made at the legislative level and not by the courts.

The dilemma with which the farmer was confronted in this case could have been wholly avoided if the Agricultural Labor Relations Board had acted more expeditiously. In this regard I perceive in the act a legislative purpose that labor disputes in the fields are intended to be resolved with dispatch and that the contemplated speedy result is not a one-way street in favor of the union. I should think, therefore, that the Board would treat all parties in an even-handed manner and do everything possible to expedite proceedings involving refusal to bargain and unfair labor practice charges.

Lastly, I cannot agree with the implication of the majority opinion that the Agricultural Labor Relations Board is an "expert agency." While that was undoubtedly the intention of the Legislature, there is no information in the record regarding the expertise of the persons occupying the positions on the Board. If we could take judicial notice of the political inclinations and formal and practical background and intellectual qualities of the members of the Board, our assessment might be far less complimentary than implied by the principal opinion.