Filed 11/27/17 (this opn. follows companion case S227243 also filed 11/27/17)

# IN THE SUPREME COURT OF CALIFORNIA

TRI-FANUCCHI FARMS,  )
                     )
      Petitioner,   )
                     )         S227270
      v.            )
                     )        Ct.App. 5 F069419
AGRICULTURAL LABOR RELATIONS  )
BOARD,               )
                     )
      Respondent;   )
                     (
UNITED FARM WORKERS OF  )
AMERICA,             )
                     )
      Real Party in Interest.  )
_____)

In 2012, Tri-Fanucchi Farms (Tri-Fanucchi) refused to bargain with the United Farm Workers of America (the UFW), the labor union that its employees had elected in 1977 as their bargaining representative under the Agricultural Labor Relations Act (the ALRA or the Act). Tri-Fanucchi argued that the union had abandoned its employees for more than two decades and thus forfeited its status as bargaining representative. Consistent with its longstanding practice, the Agricultural Labor Relations Board (the Board or the ALRB) rejected the employer's abandonment defense and determined that Tri-Fanucchi's refusal constituted an unfair labor practice under the ALRA. The Board then ordered Tri-Fanucchi to pay make-whole relief under Labor Code section 1160.3, which is

1

intended in part to compensate employees for employer-caused delays in the collective bargaining process. (All undesignated statutory references are to the Labor Code.) The Court of Appeal affirmed the Board's rejection of Tri-Fanucchi's abandonment defense. But the Court of Appeal reversed the Board's make-whole relief award, reasoning that Tri-Fanucchi's litigation "furthered the broader purposes of the ALRA" because no appellate court had expressly ruled on the abandonment issue presented here.

For the reasons set forth in *Gerawan Farming, Inc. v. Agricultural Labor Relations Board* (Nov. 27, 2017, S227243) __ Cal.5th __ (*Gerawan*), we hold that the Court of Appeal correctly rejected Tri-Fanucchi's assertion of an abandonment defense. As we explain in *Gerawan*, the ALRA does not permit an employer to "unilaterally declare that it will refuse to engage with the union because it believes the union has abandoned its employees." (*Gerawan*, at p. __ [p. 44].) As to the issue of make-whole relief, we hold that the Court of Appeal did not accord the Board sufficient deference and improperly exercised the Board's remedial authority. We thus reverse in part the Court of Appeal's judgment.

**I.**

Tri-Fanucchi is a farming business located in Kern County. It employs approximately 35 permanent employees and hires several hundred seasonal employees through various labor contractors.

On October 21, 1977, after a secret ballot election, the Board certified the UFW as the exclusive bargaining representative of Tri-Fanucchi's employees. Several days later, the UFW initiated collective bargaining negotiations. Tri-Fanucchi responded by refusing to bargain, purportedly to seek judicial review of the union's election. The following year, the UFW filed an unfair labor practice charge alleging that Tri-Fanucchi's refusal to bargain violated the ALRA. The charge was dismissed after Tri-Fanucchi reversed its position and agreed to begin

2

negotiations. (See *Tri-Fanucchi Farms* (1986) 12 ALRB No. 8, p. 2 (hereafter ALRB 1986 Decision).)

Some initial bargaining sessions occurred after the UFW was certified. But between May 1979 and July 1981, "no communications between the parties took place and no negotiations were scheduled." (ALRB 1986 Decision, *supra*, 12 ALRB No. 8 at p. 2.) In July 1981, after the UFW requested to resume bargaining, Tri-Fanucchi conducted an employee "poll" to ascertain whether they desired to be represented by the UFW. As a result of this poll, Tri-Fanucchi concluded that the UFW had lost the support of a majority of its employees, and so the company again refused to bargain with the union. (*Id.* at p. 3.) The UFW filed several unfair labor practice charges against Tri-Fanucchi, which the Board ultimately sustained. Finding that Tri-Fanucchi's refusal to bargain "was without justification or arguable legal support," the Board awarded make-whole relief under section 1160.3. (ALRB 1986 Decision, at p. 9.) In an unpublished opinion, the Court of Appeal affirmed both the Board's findings that Tri-Fanucchi committed unfair labor practices and its make-whole relief award.

According to Tri-Fanucchi, the company informed the UFW that it was willing to bargain in 1988. The UFW initially represented that it would schedule negotiations after the union's lead negotiator returned from vacation, but the UFW never responded and no dates were ever set. Tri-Fanucchi claims that the UFW then made no effort to communicate with the employer or to represent its employees for the next 24 years. The UFW disputes these claims, asserting that it maintained contact with the employees during this time period and even represented them on nonbargaining matters. Because the Board ruled that an employer cannot raise an abandonment defense as a matter of law, it took no evidence on Tri-Fanucchi's abandonment claim and simply assumed that the facts Tri-Fanucchi alleged were true.

3

On September 28, 2012, the UFW sent Tri-Fanucchi a formal request to restart bargaining. Tri-Fanucchi responded with a letter stating that "the UFW has . . . abandoned the bargaining unit and is no longer the valid collective bargaining representative of its employees." Further, Tri-Fanucchi said that because the question whether a union can lose its status as bargaining representative through abandonment had "never been conclusively addressed" by the courts, it would refuse to bargain "to obtain judicial review of the status of the UFW." The UFW urged Tri-Fanucchi to reconsider and said its refusal to bargain was "in clear bad faith" because relevant ALRB precedent rejecting abandonment was "so clear."

After Tri-Fanucchi did not retreat from its position, the UFW filed unfair labor practice charges with the Board in early 2013, alleging that Tri-Fanucchi violated the ALRA by refusing to bargain and to provide requested information. The Board's general counsel thereafter filed an administrative complaint against Tri-Fanucchi alleging that the company's actions violated section 1153, subdivisions (a) and (e), and seeking make-whole relief for the benefit of Tri-Fanucchi's employees. (*Tri-Fanucchi Farms* (2014) 40 ALRB No. 4, p. 3 (hereafter ALRB 2014 Decision).) In its answer, Tri-Fanucchi admitted to the factual allegations but claimed as a defense, among other things, that the UFW had abandoned its status as bargaining representative. (*Id.* at p. 4.) Tri-Fanucchi also claimed that its refusal to bargain was in good faith for the purpose of obtaining judicial review of an important labor relations issue.

The case was set for an administrative law judge (ALJ) hearing on October 21, 2013. Before the hearing, the Board's general counsel filed a motion to exclude any evidence relating to Tri-Fanucchi's abandonment defense, contending that the ALRA did not permit such a defense. The ALJ granted the motion, holding that even if the facts Tri-Fanucchi sought to prove were true, they did not

4

establish a defense to bargaining under the ALRA. In light of Tri-Fanucchi's admissions, the ALJ found that Tri-Fanucchi's refusal to bargain violated the ALRA. The ALJ further ordered that Tri-Fanucchi pay make-whole relief to its employees for the period from October 19, 2012, when Tri-Fanucchi made clear its refusal to bargain with the UFW, until the date that it commenced good faith bargaining with the union. (ALRB 2014 Decision, *supra*, 40 ALRB No. 4 at pp. 4–7.)

The Board issued its decision on April 23, 2014, largely affirming the ALJ's rulings. The Board explained that its "previous decisions have been very clear that, under the ALRA, the fact that a labor organization has been inactive or absent, even for an extended period of time, does not represent a defense to the employer's duty to bargain." (ALRB 2014 Decision, *supra*, 40 ALRB No. 4 at p. 8.) "[E]xcept in cases where the union disclaims interest in representing the bargaining unit or becomes defunct," the Board continued, "the union remains certified until removed or replaced through the ALRA's election procedures, regardless of any bargaining hiatus or union inactivity that may have occurred." (*Ibid.*) The Board likewise affirmed the ALJ's order awarding make-whole relief. Because Tri-Fanucchi's position on the abandonment defense was "contrary to over 30 years of Board precedent holding that abandonment is not a defense to the duty to bargain," the Board concluded that Tri-Fanucchi's "position cannot be said to further the policies and purposes of the ALRA." (*Id.* at p. 18.)

The Court of Appeal upheld the Board's rejection of Tri-Fanucchi's abandonment defense as a "reasonable interpretation and application of the ALRA." Under the ALRA, the court concluded, Tri-Fanucchi "was not entitled to refuse to bargain with UFW based on UFW's past failings or inactivity, and such conduct did not create a defense to bargaining, whether labeled as abandonment or otherwise." But, holding that "the Board was clearly wrong in its legal conclusion

5

that [Tri-]Fanucchi's litigation efforts in this matter did not further purposes and policies of the ALRA," the Court of Appeal reversed the Board's order imposing make-whole relief. Despite the Board's settled interpretation that the ALRA provided no abandonment defense to bargaining, the court believed that "the question has remained to a significant degree unsettled and controversial" because no "appellate court" had weighed in on the precise issue. In the court's view, Tri-Fanucchi's "litigation plainly furthered the broader purposes of the ALRA to promote greater stability in labor relations by obtaining an appellate decision on this important issue."

Tri-Fanucchi petitioned for review of the Court of Appeal's rejection of its abandonment defense, and the Board sought review of the Court of Appeal's reversal of the make-whole relief. We granted both petitions for review.

## II.

The Court of Appeal concluded that the UFW's allegedly "lengthy period of inactivity did not defeat [Tri-]Fanucchi's duty to engage in bargaining with that union upon request." We affirm this conclusion in light of our holding in *Gerawan* that "an employer may not defend against a union's [mandatory mediation and conciliation] request by challenging the union's certification as bargaining representative on the basis of abandonment." (*Gerawan*, *supra*, __ Cal.5th at p. __ [p. 44].) An employer "has multiple options to defend against 'what may appear to be a derelict or defunct incumbent union,' " including "fil[ing] an unfair labor practice charge against a certified union representative who 'refuse[s] to bargain collectively in good faith.' " (*Ibid.*) "What an employer cannot do under the ALRA is unilaterally declare that it will refuse to engage with the union because it believes the union has abandoned its employees. That is true whether in response to an initial demand to bargain, a renewed demand to bargain, or a request to refer the parties to mandatory mediation and conciliation. In all

6

cases, the ALRA reserves the power to select the union representative to the employees and labor organizations alone." (*Ibid.*)

Tri-Fanucchi's arguments in favor of an abandonment defense restate those we rejected in *Gerawan*. The only new contention raised by Tri-Fanucchi is that the Board has "repeatedly recognized" the abandonment theory in earlier decisions. But Tri-Fanucchi misstates the Board's analysis in these decisions. As the Board explains, these decisions used the terms "abandonment" and "totally 'absent from the scene' " to describe situations in which the union was "unwilling or unable" to represent the employees — i.e., union disclaimer or defunctness. (See *Bruce Church, Inc.* (1991) 17 ALRB No. 1, pp. 9–10; *Dole Fresh Fruit Company* (1996) 22 ALRB No. 4, pp. 9–13.) Nothing in these decisions referred to the type of inactivity-based defense that Tri-Fanucchi attempts to raise here. Indeed, in *Dole Fresh Fruit Company*, the Board expressly refrained from recognizing the broader "concept of 'abandonment.' " (*Dole Fresh Fruit Company*, at p. 15.)

In sum, the Court of Appeal correctly upheld the Board's order rejecting Tri-Fanucchi's abandonment defense.

## III.

We now consider whether the Court of Appeal improperly reversed the Board's determination that Tri-Fanucchi should pay its employees make-whole relief because of its refusal to bargain with the UFW.

The ALRA authorizes the Board to grant certain remedies, including make-whole relief, when it determines that a party has engaged in unfair labor practices. (§ 1160.3.) "Make-whole relief is a compensatory remedy that reimburses employees for the losses they incur as a result of delays in the collective bargaining process. [Citation.] The remedy is designed to give agricultural employees the type of economic benefits they would have received if the parties

7

had reached a timely agreement." (*George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1286, fn. 3 (*Arakelian*).) Section 1160.3 provides that the Board shall issue an order "requiring such person to cease and desist from such unfair labor practice, to take affirmative action, including reinstatement of employees with or without backpay, *and making employees whole, when the board deems such relief appropriate*, for the loss of pay resulting from the employer's refusal to bargain, and to provide such other relief as will effectuate the policies of this part." (§ 1160.3, italics added.) "The words in [section] 1160.3 granting the Board the power to order make whole relief are words which indicate that the imposition of the remedy is discretionary . . . [¶] not per se." (*F & P Growers Assn. v. Agricultural Labor Relations Bd.* (1985) 168 Cal.App.3d 667, 679–680 (*F & P Growers*).)

The Legislature "inten[ded] that the ALRB serve as 'one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect.' " (*Tex-Cal Land Management, Inc. v. Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 346, quoting *Universal Camera Corp. v. Labor Bd.* (1951) 340 U.S. 474, 488.) Where the Board relies on its "specialized knowledge" and "expertise," its decision "is vested with a presumption of validity." (*Arakelian*, *supra*, 49 Cal.3d at p. 1292.) That presumption has even more force when courts review the Board's exercise of its remedial powers, which "are necessarily broad." (*Carian v. Agricultural Labor Relations Bd.* (1984) 36 Cal.3d 654, 673 (*Carian*).) " 'Because the relation of remedy to policy is peculiarly a matter for administrative competence, courts must not enter the allowable area of the Board's discretion and must guard against the dangers of sliding unconsciously from the narrow confines of law into the more spacious domains of policy.' " (*Id.* at p. 674.) One federal court discussing the

8

National Labor Relations Board (NLRB), on which the ALRB is modeled, has observed that " '[t]he breadth of agency discretion is, if anything, at zenith when the action assailed relates primarily not to the issue of ascertaining whether conduct violates the statute, or regulations, but rather to the fashioning of policies, remedies, and sanctions.' " (*Fallbrook Hosp. Corp. v. National Labor Relations Bd.* (D.C. Cir. 2015) 785 F.3d 729, 735.) We have recognized that "the drafters of the ALRA intended to broaden, not diminish, the ALRB's remedial authority" as compared to that of the NLRB. (*Highland Ranch v. Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 848, 865 (*Highland Ranch*).)

In light of the Legislature's clear intent to confer broad remedial powers on the Board, the Board's orders imposing remedies are only " 'subject to limited judicial review.' " (*Carian, supra*, 36 Cal.3d at p. 674.) Thus, "the [B]oard's remedial order 'should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can be fairly said to effectuate the policies of the Act.' " (*Ibid.*, quoting *Virginia Electric Co. v. Board* (1943) 319 U.S. 533, 540; see *Nish Noroian Farms v. Agricultural Labor Relations Bd.* (1984) 35 Cal.3d 726, 745 ["The Board, an expert agency, has broad discretion to fashion remedies to effectuate the purposes of the act. Courts will interfere only where those remedies are patently unreasonable under the statute."].) Tri-Fanucchi acknowledges that courts owe the Board "considerable deference" when reviewing its determination of "which remedies would effectuate the policies of the ALRA."

We first considered the ALRA's make-whole remedy in *J. R. Norton Co. v. Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1 (*J. R. Norton*). Because the ALRA does not allow for immediate judicial review of a Board order certifying a union, employers may refuse to bargain, and thereby commit an unfair labor practice, simply in order to obtain such review. This kind of refusal has been

9

called a " 'technical' refusal to bargain." (*Id.* at p. 27.)  Soon after the ALRA's enactment in 1975, the Board imposed a "blanket rule" applying the make-whole remedy in all such "technical refusal to bargain" cases. (*Id.* at pp. 27–28.)  In *J. R. Norton*, we held that that the Board cannot award make-whole relief as a per se remedy for technical refusals to bargain. (*Id.* at p. 39.)  Doing so "eviscerates important ALRA policy and fundamentally misconstrues the nature of and legislative purpose behind such relief." (*Id.* at p. 29.)  Although "make-whole relief is appropriate when an employer refuses to bargain for the purpose of delaying the collective bargaining process," we said the Board's blanket rule "place[d] burdensome restraints on those who legitimately seek judicial resolution of close cases in which a potentially meritorious claim" regarding a union election could be made. (*Id.* at pp. 31–32.)  We instead adopted the following standard: "the Board must determine from the totality of the employer's conduct whether it went through the motions of contesting the election results as an elaborate pretense to avoid bargaining or whether it litigated in a reasonable good faith belief that the union would not have been freely selected by the employees as their bargaining representative had the election been properly conducted." (*Id.* at p. 39.)

Although *J. R. Norton*'s standard applies to cases involving technical refusals to bargain, its reasoning that the Board should not impose make-whole relief on a per se basis and should instead "examine the particular facts or circumstances of each case to determine [its] 'appropriateness' " is more broadly applicable. (*F & P Growers*, *supra*, 168 Cal.App.3d at p. 680; see *id.* at p. 681.) The Board has relied on this reasoning to develop a standard, known as the *F & P Growers* standard, for determining whether make-whole relief is appropriate in cases involving nontechnical refusals to bargain.  Under this standard, the Board "consider[s] on a case-by-case basis the extent to which the public interest in the employer's position weighs against the harm done to the employees by its refusal

10

to bargain.  Unless litigation of the employer's position furthers the policies and purposes of the act, the employer, not the employees, should ultimately bear the financial risk of its choice to litigate rather than bargain." (*Id.* at p. 682.)

The parties agree that Tri-Fanucchi's refusal to bargain was not technical, and neither party disputes that the *F & P Growers* standard applies here.  We have implicitly endorsed the *F & P Growers* standard before (see *Arakelian*, *supra*, 49 Cal.3d at pp. 1294–1295) and now hold that the *F & P Growers* standard applies to nontechnical refusals to bargain like Tri-Fanucchi's refusal in this case.

The Court of Appeal recognized that the Board "explicitly followed" the *F & P Growers* standard in its decision.  Nevertheless, in setting aside the Board's remedial order, the Court of Appeal criticized the Board for basing its decision "solely on its legal evaluation or value judgment that [Tri-]Fanucchi's litigation of the abandonment issue . . . did not further the policies and purposes of the ALRA." This "legal conclusion" was "clearly wrong," the court said, because "the question of how an appellate court would actually rule when confronted with the novel situation of such *long-term* union absence or *egregious* inactivity (i.e., 24 years) as alleged here was far from certain."  The court continued:  "[T]he question has remained to a significant degree unsettled and controversial.  Against this larger backdrop, it is clear to us that judicial review of the issue was reasonably necessary and helpful to all parties concerned, including both unions and agricultural employers, for the beneficial purpose of clarifying and/or confirming the law.  Therefore, [Tri-]Fanucchi's advancement of this litigation plainly furthered the broader purposes of the ALRA to promote greater stability in labor relations by obtaining an appellate decision on this important issue."

We conclude that the Court of Appeal, in determining that Tri-Fanucchi's litigation "plainly further the broader purposes of the ALRA," improperly assumed the Board's remedial authority.  Despite recognizing that the Board

11

should be given "due deference," the Court of Appeal did not give the Board's make-whole relief order any deference. Rather, the court determined that the Board's "legal conclusion" was "clearly wrong" and then independently determined that make-whole relief was inappropriate in this case.

But the ALRA expressly authorizes the Board to impose make-whole relief "when *the board* deems such relief appropriate." (§ 1160.3, italics added.) In assessing whether make-whole relief is appropriate, the Board has adopted a standard that asks whether litigation of the employer's position furthers the ALRA's policies and purposes. The Board's decision to impose make-whole relief is thus best understood as an exercise of the Board's discretionary policy authority, not a legal conclusion subject to de novo review. (See *Bixby v. Pierno* (1971) 4 Cal.3d 130, 150–151 [An agency's "statutory discretion . . . would be entirely abrogated" if we were to hold that discretionary policy determinations "necessarily constitute questions of law for the courts to decide. . . . [T]he courts should not substitute their own judgment for that of the agency."].) Whether make-whole relief is appropriate in this case requires not only evaluation of the abandonment question but also consideration of countervailing concerns, such as previous interactions between the employer and the union as well as "the harm done to the employees by [the employer's] refusal to bargain." (*F & P Growers*, *supra*, 168 Cal.App.3d at p. 682.) Because the Legislature assigned the responsibility to evaluate and balance these concerns in the first instance to the Board, the Court of Appeal's independent review was improper.

Of course, the Board must determine on a case-by-case basis whether make-whole relief is appropriate; it may not award such relief without exercising its discretion. (*F & P Growers*, *supra*, 168 Cal.App.3d at pp. 681–682.) But there is no evidence to support Tri-Fanucchi's assertion that the Board imposed make-whole relief here "in a conclusory fashion simply because [Tri-Fanucchi] lost its

12

appeal before the Board."  Rather, the Board explained that make-whole relief was appropriate "[b]ased upon [its] review of *the facts and circumstances and the equities of this case*."  (ALRB 2014 Decision, *supra*, 40 ALRB No. 4 at p. 20, italics added.)  Indeed, although the Board rejected Tri-Fanucchi's arguments that delays caused by the UFW and the ALRB made it inappropriate to award make-whole relief, both the Board's order and the Board Chairman's special concurrence made clear that different facts could make out "a delay that would warrant denying the remedy."  (*Id.* at p. 22 (conc. opn.).)  The Board's order assessed the particular circumstances of this case and was not made in a conclusory fashion.

The Court of Appeal opined that only a published appellate decision in the context of a "long-term union absence" was sufficient to "settle" the question whether the ALRA permits employers to raise an abandonment defense.  To be sure, "the courts are the ultimate arbiters of the construction of a statute." (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 11.)  And there may be cases in which an employer's challenge to the Board's settled construction of the ALRA in order to obtain judicial review sufficiently advances the Act's policies and purposes.  But we have repeatedly held that courts should "accord significant weight and respect to the long-standing construction of a law by the agency charged with its enforcement."  (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1082; see *Highland Ranch*, *supra*, 29 Cal.3d at p. 859 [the Board's interpretation of the ALRA " 'must be given great weight' "].)  Yet the Court of Appeal gave no weight to the Board's interpretation that the ALRA does not allow for an abandonment defense, even though it acknowledged that the Board has consistently applied that interpretation for three decades.

Nor can the court's conclusion be squared with its own observation that the Board's rejection of Tri-Fanucchi's abandonment defense was "consistent with

13

how California appellate courts have construed the ALRA." The Court of Appeal cited several published appellate decisions, including *Montebello Rose Co. v. ALRB* (1981) 119 Cal.App.3d 1, and *F & P Growers*, *supra*, 168 Cal.App.3d 667, for the principle that an employer's duty to bargain under the ALRA continues until the union is replaced or decertified, and then explained how the Board's position on abandonment is simply a further application of those principles. But in reversing the Board's make-whole relief award, the Court of Appeal claimed that the abandonment question "has remained to a significant degree unsettled and controversial." The Court of Appeal's straightforward application of relevant precedent to reject Tri-Fanucchi's abandonment defense seems in tension with its conclusion that the issue was unsettled and in need of clarification.

Although *J. R. Norton* cautioned against placing "burdensome restraints on those who legitimately seek judicial resolution of close cases" (*J. R. Norton*, *supra*, 26 Cal.3d at p. 32), the longevity and uniformity of relevant authority suggests that the abandonment question was not especially close at the time Tri-Fanucchi refused to bargain. Moreover, *J. R. Norton*'s discussion of judicial review is limited to the context of that case. *J. R. Norton* did not involve an employer seeking judicial review in order to bring clarity to the law. Rather, it concerned employers' ability to litigate objections to particular union elections or certifications in a judicial forum. The "especially compelling" need for judicial review in *J. R. Norton* must be understood in light of the purpose of permitting employers to contest specific administrative actions that would otherwise be immunized from judicial review. (*Id.* at p. 34; see *id.* at pp. 30–32.)

The *F & P Growers* standard does not focus solely on whether an appellate decision would bring greater clarity to the law. Instead, it requires the Board to weigh the extent to which the employer's litigation advances the ALRA's purposes and policies against the risks and harms caused by such litigation and its

14

attendant delays to the collective bargaining process. (*F & P Growers*, *supra*, 168 Cal.App.3d at p. 682.) Against the backdrop of Tri-Fanucchi's previous refusals to bargain, earlier findings that the employer had committed unfair labor practices, and an unbroken line of ALRB decisions rejecting the abandonment defense, the Board reasonably determined that make-whole relief was appropriate here to compensate Tri-Fanucchi's employees for the delays incurred by Tri-Fanucchi's refusal to bargain and its subsequent litigation.

To hold that make-whole relief is inappropriate unless there is a published appellate decision on the exact issue raised by the employer would risk undermining the ALRA's purpose of bringing stability to agricultural labor relations by encouraging employers to refuse to bargain and instead to litigate disputed issues. If parties were allowed to regularly circumvent Board decisions by obtaining relief in court, "the Board would be replaced by ad hoc determinations by already overcrowded courts. The legislative effort to bring order and stability to the collective bargaining process would be thwarted. The work of the Board would be effectively impaired, its decisions similar in impression to that of a tinkling triangle practically unnoticed in the triumphant blare of trumpets." (*United Farm Workers v. Superior Court* (1977) 72 Cal.App.3d 268, 272.) Tri-Fanucchi's briefing in this court makes clear this danger: It contends that "until such time as [Tri-]Fanucchi raised the question of law before the Court of Appeal as to whether long term and total abandonment by the bargaining representative was a defense to an employer's duty to bargain, the Board's statutory construction and legal analysis of the abandonment defense under the ALRA was not binding or final."

Accepting the Court of Appeal's rationale would thwart the Legislature's design to give *the Board*, not the courts, "exclusive primary jurisdiction over all phases of the administration of the Act as regards unfair labor practices." (*United*

15

*Farm Workers v. Superior Court*, *supra*, 72 Cal.App.3d at p. 271.)  Because the Board's order was not " 'a patent attempt to achieve ends other than those which can be fairly said to effectuate the policies of the Act' " (*Carian*, *supra*, 36 Cal.3d at p. 674), the Court of Appeal should have upheld the Board's remedial order as an appropriate exercise of its discretion under the ALRA.  In concluding otherwise, the court exceeded the " 'limited judicial review' " applicable to the Board's order.  (*Ibid.*)

**CONCLUSION**

For the reasons above, we reverse the Court of Appeal's judgment reversing the Board's award of make-whole relief.  In all other respects, we affirm the Court of Appeal's judgment and remand for further proceedings consistent with our opinion.

**LIU, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**KLINE, J.**\*

---

\*    Presiding Justice of the Court of Appeal, First Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Tri-Fanucchi Farms v. Agricultural Labor Relations Board
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 236 Cal.App.4th 1079
**Rehearing Granted**

_____

**Opinion No.** S227270
**Date Filed:** November 27, 2017
_____

**Court:**
**County:**
**Judge:**

_____

**Counsel:**

Sagaser, Watkins & Wieland, Howard A. Sagaser, William M. Woolman, Ian B. Wieland and Allie E. Wieland for Petitioner.

J. Antonio Barbosa, Santiago Avila-Gomez, Paul M. Starkey, Todd M. Ratshin and Scott P. Inciardi for Respondent.

Martínez Aguilasocho & Lynch, Mario Martínez, Thomas P. Lynch and Edgar I. Aguilasocho for Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Howard A. Sagaser
Sagaser, Watkins & Wieland
7550 North Palm Avenue, Suite 100
Fresno, CA  93711
(559) 421-7000

Scott P. Inciardi
Agricultural Labor Relations Board
1325 J Street, Suite 1900-B
Sacramento, CA  95814
(916) 653-3741

Mario Martínez
Martínez Aguilasocho & Lynch
P.O. Box 1998
Bakersfield, CA  93303
(661) 859-1174