Filed 5/4/18 opinion on transfer from Supreme Court

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ARNAUDO BROTHERS, L.P. et al., | F072420 |
| Petitioners, | |
| v. | (2012-CE-030-VIS, 40 ALRB No. 3 & 41 ALRB No. 6) |
| AGRICULTURAL LABOR RELATIONS BOARD, | **OPINION** |
| Respondent; | |
| UNITED FARM WORKERS OF AMERICA, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING; petition for writ of review.

Charley M. Stoll, Rachelle O. Tejada and Anne W. Nilsen for Petitioners.

J. Antonio Barbosa, Paul M. Starkey and Todd M. Ratshin for Respondent.

Martinez Aguilasocho & Lynch and Mario G. Martinez for Real Party in Interest.

-ooOoo-

This writ proceeding addresses decisions by the Agricultural Labor Relations Board (Board) that an agricultural employer committed unfair labor practices by refusing to bargain with, and provide information to, the United Farm Workers of America (Union). The employer's defense was that in the early 1980's, the Union expressly disclaimed any

---

[*]     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III. of the Discussion.

interest in representing the bargaining unit—a disclaimer reinforced by the Union's 30 years of inactivity. The Board rejected the employer's disclaimer defense to the failure to bargain charge, finding the purported disclaimer was not clear and unequivocal. The Board awarded make whole-relief based on the determination that the employer's litigation of the disclaimer issue did not further the policies and purpose of the Agricultural Labor Relations Act of 1975 (Lab. Code, §§ 1140-1166.3).[1] The employer contends the Board erred in rejecting its disclaimer defense and in awarding make-whole relief.

In August 2017, we issued a decision concluding the Board properly rejected the employer's disclaimer defense to the charge that employer failed to bargain with the Union, but erred in determining make-whole relief was "appropriate" for purposes of section 1160.3. The California Supreme Court granted review pending its decisions in *Gerawan Farming, Inc. v. Agricultural Labor Relations Bd*. (2017) 3 Cal.5th 1118 (*Gerawan*) and *Tri-Fanucchi Farms v. Agricultural Labor Relations Bd*. (2017) 3 Cal.5th 1161 (*Tri-Fanucchi*). In March 2018, the Supreme Court directed us to vacate our decision and reconsider the matter in light of *Tri-Fanucchi*, which reinstated an award of make-whole relief that this court had vacated.

Having received supplemental briefs and replies to the supplemental briefs, we conclude the Board did not err when it (1) identified and applied the rules that define when a certified union has made a disclaimer of interest in representing the bargaining unit; (2) determined the statement by the Union representative that "we're through with you" (if made) was not a clear and unequivocal disclaimer of interest; and (3) concluded the Union's subsequent conduct consistent with a disclaimer could not render the equivocal disclaimer effective. On the question of make-whole relief, the principles set forth in *Tri-Fanucchi* compel the conclusion that the Board properly exercised its broad discretionary authority when it awarded make-whole relief in this case.

---

[1] All unlabeled statutory references are to the Labor Code.

We therefore affirm the Board's decisions.

## FACTS

*Parties*

Arnaudo Bros., L.P., a California limited partnership, and Arnaudo Bros., Inc., a California corporation, are the petitioners in this writ proceeding and were the respondents named in case No. 2012-CE-030-VIS before the Board. Steve Arnaudo, Leo Arnaudo and Greg Arnaudo are partners in Arnaudo Bros., L.P. The entities grow, harvest and pack asparagus and grow cannery tomatoes and alfalfa on approximately 6,000 acres of land near Tracy, California. They directly hire their agricultural employees, which one estimate places at approximately 130 to 150 workers at the seasonal peak. During the proceedings before the Board, the partnership and the corporation stipulated they would be jointly liable for any statutory violations. Consequently, we refer to the partnership and the corporation collectively as "Grower."

The Union is a labor organization within the meaning of section 1140.4, subdivision (f) of the Agricultural Labor Relations Act. On January 14, 1977, the Union was certified by the Board as the exclusive bargaining representative of Grower's agricultural workers in San Joaquin County.

*Initial Bargaining*

After the election, five years of negotiations between Grower and the Union failed to result in a collective bargaining agreement. Contact between Grower and the Union ceased in late 1981 or the first half of 1982. Exactly what happened in the last few contacts between Grower and the Union in the early 1980's is uncertain. The uncertainty about how the negotiating process ended was not resolved by a finder of fact, which assumed certain testimony presented by Grower was accurate.

*2012 Renewal of Bargaining*

On August 7, 2012, after at least 30 years of silence, the Union sent Grower a letter seeking to renew negotiations on a collective bargaining agreement. The letter also

3.

requested information, including (1) separate employee lists for the 2011 and 2012 seasons; (2) maps of the properties used in Grower's operations; (3) the names and titles of Grower's representatives; (4) the name and license number of any farm labor contract used by Grower; (5) Grower's agricultural products; (6) the daily and yearly hours worked by employees; (7) a summary of employee benefits and wages in 2010, 2011 and 2012; and (8) copies of current employee manuals and policies.

On August 27, 2012, the Union repeated its written request, informing Grower it would file a charge with the Board for refusals to bargain and furnish information if Grower did not respond within five days. Grower did not respond to either request within the time stated by the Union.

*Union Files Unfair Labor Practice Charges*

On September 10, 2012, the Union filed the charge that initiated the proceedings now before this court. The charge alleged Grower refused to provide information requested by the Union.

The Union designated Guadalupe Larios to negotiate with Grower and its attorney, Robert K. Carrol. In response to Larios's September 24, 2012, email, Carrol did not respond directly to the dates proposed for the recommencement of bargaining, but stated he would contact her after returning from South America on October 9, 2012, to discuss preliminary questions such as (1) what happened at the bargaining table between 1977 and 1982 before the Union walked away, (2) whether the bargaining unit had changed dramatically in the past 30 years, (3) whom exactly the Union believed it was representing, and (4) whether the Union had comparable contracts it would send him for review.

The parties continued to exchange communications during the following months. For example, on November 13, 2012, Grower provided the Union with a spreadsheet that included some of the requested information for approximately 200 employees who worked for Grower through March until October of 2012. The Union determined that over 100 of the addresses given were inaccurate.

During the months the Union and Grower's attorney exchanged communications, Board's regional office investigated the charge filed by the Union. That investigation included serving a subpoena requesting some of the same information sought by the Union. During January 2013, Grower provided some information to the Union and Board. In a January 22, 2013, email to Larios, Carrol suggested that they discuss bargaining dates starting after Grower's employees returned to work "in a few more weeks."

In early February 2013, the Union filed a declaration with the Board requesting mandatory mediation and conciliation pursuant to section 1164.[2] Grower filed an answer to the declaration asserting the parties had made repeated attempts to find mutually agreeable dates to commence bargaining and the Union had unilaterally abandoned that effort. On February 13, 2013, the Board issued an order directing the parties to proceed with mandatory mediation. Due to scheduling conflicts among the parties, their counsel and the mediator, the first session of mandatory mediation was set for May 24, 2013.

In April 2013, a field worker and employee of Grower circulated a document among other employees of Grower stating they did not want the Union's services or any other union. The document was signed by 86 employees.

*The Unfair Labor Practice Complaint*

On May 9, 2013, an unfair labor practice complaint, based on the September 2012 charges, was issued by the Board's general counsel. The complaint alleged Grower had committed unfair labor practices by (1) interfering with employees' exercise of their statutory rights, (2) refusing to provide complete and accurate bargaining information to the

---

**2** In 2002, the Legislature added a new chapter to the Agricultural Labor Relations Act that created a binding procedure called mandatory mediation and conciliation. (See see Lab. Code, §§ 1164-1164.13; Cal. Code Regs., tit. 8, §§ 20400-20408 [regulations governing mandatory mediation].)

We refer to the binding procedure as "mandatory mediation," rather than using the acronym "MMC" adopted by the parties. (See Herrmann, The Curmudgeon's Guide to Practicing Law (ABA 2006) 6 [clear writing "avoid[s] alphabet soup"].)

Union and (3) refusing to make itself available at reasonable times for the purpose of negotiating with the Union. Grower's answer stated negotiations had not been held due to scheduling conflicts on both sides and, moreover, a mandatory mediation had been set for May 24, 2013, by the parties and the mediator. The answer also asserted the affirmative defenses of waiver, estoppel, laches and the statute of limitations. The hearing on the unfair labor practices charges was set for July 25, 2013.

*Decertification Petition*

On May 24, 2013, a petition to decertify the Union was filed by the employee who earlier circulated the document expressing the desire to leave the Union. The same day, the acting regional director issued a notice of decision to block the decertification election.[3] About a week later, the employee requested the Board review the acting regional director's decision to block the election. Grower also filed a request for review.

On June 13, 2013, the Board issued *In re Arnaudo Brothers, LP* (2013) 39 ALRB No. 9, affirming the acting regional director's decision to block the election requested in the decertification petition. Although the Board determined the acting regional director committed procedural error by failing to investigate and decide whether the decertification petition was valid before deciding whether to block the election, it ultimately concluded that the pending unfair labor practice complaint against Grower, alleging refusal to provide information and bargain, was sufficient to block the decertification election.

*Unfair Labor Practice Proceedings*

On June 21, 2013, the Board's general counsel issued a first amended complaint that added Arnaudo Bros., Inc. as a respondent and alleged the corporation and Arnaudo Bros., L.P. were alter egos of one another. The amended complaint asserted the same three causes of action as the original complaint.

---

**3** May 24, 2013, also was the date the parties and the mediator first met for mandatory mediation.

On July 22, 2013, three days before the scheduled unfair labor practice hearing, Grower filed a motion for summary judgment, supported by declarations from Steve Arnaudo and Carrol. The motion asserted the cause of action alleging Grower had unlawfully delayed bargaining was "preposterous" on its face and failed as a matter of law. It also asserted the other two causes of action alleging a failure to produce documents and information could not be established because Grower provided all the information necessary for the Union to bargain intelligently.

The next day, the administrative law judge issued a one-sentence order denying the motion for summary judgment. At the subsequent hearing, the administrative law judge explained that the facts upon which the motion was based had not been established as true and the Board's general counsel was entitled to an opportunity to present evidence relating to those factual assertions.

*Initial Decisions*

On September 26, 2013, after two days of testimony on the unfair labor practice complaint and the filing of posthearing briefs, the administrative law judge issued his decision. The decision stated Grower had committed unfair labor practices by (1) refusing to agree to meet with the Union within a reasonable time after the Union requested bargaining and (2) failing to respond adequately to the Union's information request.

Grower filed a dozen exceptions to the decision. Among other things, Grower argued the administrative law judge's refusal to allow evidence pertaining to the Union's three-decade absence denied Grower an opportunity to present the defense of the Union's disclaimer of interest.

On April 4, 2014, the Board issued its decision in *Arnaudo Brothers, LP and Arnaudo Brothers, Inc.* (2014) 40 ALRB No. 3 (*Arnaudo I*). The decision addressed abandonment and disclaimer of interest, concluded disclaimer of interest was one way a union might forfeit its certification, and remanded to the administrative law judge with an order "to take evidence on the sole issue of whether a disclaimer of interest occurred."

7.

*Supplemental Hearing and Decision*

The administrative law judge held hearings relating to the alleged disclaimer of interest on October 14, 2014, and March 6, 2015. Steve Arnaudo testified as to his recollection of what was said at the last bargaining session with the Union, which he thought occurred on October 21, 1981. According to Arnaudo, the union negotiator asked him, "You don't like unions, do you?" Arnaudo responded, "Yeah, I'm okay with unions. I just don't like, particularly, your union … I have no problem with unions, except you." The Union negotiator replied, "We don't like you either. We're through with you." Arnaudo then told him, "Well, great, so I'm over with you.'"

Dante Nomellini, the Grower's attorney at the last bargaining session, testified that he did not hear or recall any such statements. Luciano Crespo, the bargaining representative for the Union, testified he never spoke with Arnaudo, and did not make any such statements to anyone. He explained that after a cursory opening statement, he handed Nomellini a written proposal, which Nomellini took and said he would need time to review it with his client and would respond later. Nothing else was said and Nomellini and Arnaudo left the meeting. Crespo testified that he immediately returned to his office and wrote a letter to Nomellini, essentially thanking him for the meeting and ending with something like: "I'll await your response." No response was received.

On April 29, 2015, the administrative law judge issued his supplemental decision addressing (1) the Union's alleged disclaimer of interest and (2) make whole relief. As to the disclaimer of interest, the test applied was whether the Union's conduct was clear, unequivocal, not in bad faith, and not inconsistent with its subsequent conduct. Although the administrative law judge stated: "The testimony, and lack thereof, presents several potential credibility analyses," he sidestepped making credibility findings regarding the testimony about an exchange between Steve Arnaudo and the Union representative. Instead, the administrative law judge decided the statements recounted by Steve Arnaudo, if made, were not a clear and unambiguous disclaimer of interest in representing Grower's

8.

employees.  This approach also allowed the administrative law judge to avoid deciding whether Crespo wrote or called Nomellini after the last session to request further negotiations.  As to the Union's subsequent hiatus from bargaining, the administrative law judge stated:

> "Board, in its Decision herein, stated that mere inactivity does not amount to a disclaimer of representative status.  The undersigned does not believe that such inactivity can be used to clari[f]y an otherwise ambiguous and equivocal statement, so as to create a disclaimer.  Rather, evidence must be produced showing conduct, in itself, which clearly and unequivocally establishes such a disclaimer.  **Then**, evidence of subsequent conduct inconsistent with the disclaimer may be considered to show it was unintentional or made in bad faith."  (Original boldface, fn. omitted.)

Based on his analysis of the statement presumably made by the Union representative, and his view of the legal principles governing the role of subsequent conduct, the administrative law judge rejected the disclaimer defense and reiterated his conclusion that Grower's conduct violated subdivisions (a) and (e) of section 1153.

The remedy formulated by the administrative law judge directed Grower to cease and desist from failing to provide information and from failing to bargain.  He also directed Grower to make information available to the Union and to make the bargaining unit members whole for all losses in wages and fringe benefits they reasonably suffered as the result of Grower's refusal to bargain, for the period of September 27, 2012, to May 24, 2013 (i.e., the date of the first mandatory mediation session), plus interest.

Grower and the Union filed exceptions to the administrative law judge's supplemental decision.  Grower contended the Union's negotiator clearly disclaimed any interest in representing Grower's employees and, alternatively, the inactivity of the Union could be used to clarify any ambiguity in statements disclaiming the Union's interest.  The Union contended Grower had prolonged the mandatory mediation process for two years and, therefore, the make whole period should end on the date the parties implemented the contract imposed pursuant to the mandatory mediation process.

9.

*Board's Second Decision*

On September 10, 2015, the Board issued *Arnaudo Brothers, LP and Arnaudo Brothers, Inc.* (2015) 41 ALRB No. 6 (*Arnaudo II*) in which a majority affirmed the administrative law judge's ruling, findings and conclusions in full. The concurring and dissenting opinion of one Board member agreed with rejecting the claim that the Union disclaimed interest in representing the bargaining unit, agreed with awarding a make whole remedy, but provided additional grounds for why the make whole remedy was appropriate.

The Board's decision adopted the recommended order and directed Grower to take the actions set forth in that order. The majority decision in *Arnaudo II* did not contain any independent analysis or findings relating to (1) the final conversation between representatives of the Union and Grower in 1981 or 1982 or (2) the make whole remedy.

In September 2015, Grower filed a petition for review of the Board's decisions in *Arnaudo I* and *Arnaudo II* with this court. In July 2016, when the briefing was complete, we issued a writ of review. In August 2017, we issued our decision and the Supreme Court granted review. In March 2018, the Supreme Court directed us to vacate our decision and reconsider the cause in light of *Tri-Fanucchi*.

## DISCUSSION

I.     BASIC PRINCIPLES

A.     Jurisdiction of Court of Appeal

Section 1160.8 provides in pertinent part: "Any person aggrieved by the final order of the board granting or denying in whole or in part the relief sought may obtain a review of such order in the court of appeal … by filing in such court a written petition requesting that the order of the board be modified or set aside." The grounds for judicial review are limited to (1) whether substantial evidence supports the Board's decision, (2) whether an error of law was made, and (3) whether the decision was procedurally sound. (*Phillip D. Bertelsen, Inc. v. Agricultural Labor Relations Bd.* (1992) 2 Cal.App.4th 506, 519.) To remedy these

10.

errors, the court may "make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part, the order of the board."  (§ 1160.8.)

B.    Standards of Review

*1.    Questions of Fact*

The Board's findings on question of fact are upheld "if supported by substantial evidence on the record considered as a whole."  (§ 1160.8.)  When reviewing the sufficiency of the evidence to support factual findings, our power as a court of review is limited to whether substantial evidence supports the finding; we have no power to judge the effect or value of the evidence, to weigh the evidence, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn from the evidence.  (*Montebello Rose Co. v. Agricultural Labor Relations Bd.* (1981) 119 Cal.App.3d 1, 21 (*Montebello Rose*).)  Consequently, where substantial evidence supports the Board's factual findings, "we are not concerned that contrary findings may seem to us equally reasonable, or even more so."  (*Rivcom Corp. v. Agricultural Labor Relations Bd.* (1983) 34 Cal.3d 743, 756-757.)

Witness credibility is a matter particularly for the trier of fact.  (*Harry Carian Sales v. Agricultural Labor Relations Bd.* (1985) 39 Cal.3d 209, 220; *Montebello Rose*, *supra*, 119 Cal.App.3d at p. 20.)  As a result, this court will accept a finding that a witness's testimony was credible, unless the testimony is incredible or inherently improbable.  (*Ibid.*)

*2.    Questions of Law*

Questions of law are subject to independent review by this court and a Board decision that rests on an erroneous legal foundation will be set aside.  (*Artesia Dairy v. Agricultural Labor Relations Bd.* (2008) 168 Cal.App.4th 598, 605 (*Artesia Dairy*).)

*3.    Statutory Construction*

Statutory construction is a specific type of legal question.  Generally, the Board's interpretation of the Agricultural Labor Relations Act is given deference because the Board is the administrative agency entrusted with enforcement of the statute.  (*Artesia Dairy*,

11.

*supra*, 168 Cal.App.4th at p. 605.)  Accordingly, courts will follow the Board's interpretation of the statute unless it is clearly erroneous.  (*Ibid*.)  Nevertheless, a fundamental responsibility of a court construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law.  (*J.R. Norton Co. v. Agricultural Labor Relations Bd*. (1979) 26 Cal.3d 1, 29 (*J.R. Norton*); *Bodinson Mfg. Co. v. California E. Com*. (1941) 17 Cal.2d 321, 326 [courts state the true meaning of a statute finally and conclusively].)  Thus, while an administrative agency is entitled to deference when interpreting policy in its field of expertise, the agency cannot alter or amend the statute it is interpreting, or enlarge or impair its scope.  (*J.R. Norton*, *supra,* at p. 29 [Board's automatic application of make whole remedy misconstrued statute].)

In addition, the Board's leeway in interpreting the Agricultural Labor Relations Act is subject to an express statutory limitation.  Section 1148 states that the Board "shall follow applicable precedents of the National Labor Relations Act, as amended."

First, the term "precedent" covers both judicial and administrative decisions.  (Gould, *Some Reflections on Contemporary Issues in California Farm Labor* (2017) 50 U.C. Davis L.Rev. 1243, 1245, fn. 5)  Thus, "precedent" may be established by the United States Supreme Court, federal appellate courts or the National Labor Relations Board (NLRB).  (See *Highland Ranch v. Agricultural Labor Relations Bd*. (1981) 29 Cal.3d 848, 855 [traditionally, the court would "look to established administrative and judicial interpretations of the federal act as persuasive indicants of the appropriate interpretation of the state legislation"].)  However, "precedent" does not include any rule of practice or procedure adopted by the federal agency.  (*Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 412.)

Second, as to whether or not a precedent is "applicable" for purposes of section 1148, our Supreme Court has stated that, "under certain circumstances, the board may diverge from federal precedents if the particular problems of labor relations within the agricultural

context justify such treatment." (*Triple E Produce Corp. v. Agricultural Labor Relations Bd.* (1983) 35 Cal.3d 42, 48.)

II.     DISCLAIMER OF INTEREST BY THE UNION

    A.     <u>Background</u>

        *1.     Certification of a Labor Organization*

A labor organization that wins an election and is certified by the Board becomes the exclusive bargaining representative of the employees. (§§ 1156, 1156.3.) The two primary consequences of certification are (1) a one-year statutory bar to holding another representation election and (2) the creation of a mutual obligation of the union and the agricultural employer to bargain collectively in good faith. (§§ 1155.2, 1156.5.) In *Montebello Rose*, this court concluded that the duty to bargain with a certified labor organization does not expire with the initial one-year period because the organization's status as the certified bargaining representative continues after the one-year period expires. (*Montebello Rose*, *supra*, 119 Cal.App.3d at pp. 24-26.)

        *2.     Loss of Union's Representative Status*

The Board has interpreted the Agricultural Labor Relations Act to mean that once a labor organization is certified as the exclusive bargaining representative of a group of employees, it remains certified "until it is decertified or a rival union is certified, or until the union becomes defunct or disclaims interest in continuing to represent the unit employees." (*Lu-Ette Farms, Inc.* (1982) 8 ALRB No. 91, p. 5.) Stated another way, "a union, once certified, remains the employees' exclusive bargaining representative until it is decertified or until the union is unwilling or unable to represent the bargaining unit." (*Gerawan*, *supra*, 3 Cal.5th at p. 1155.) This principle is referred to as the "'certified until decertified'" rule. (*Ibid*.) Unlike decertification, the exceptions of defunctness[4] and disclaimer are not

---

[4]     Defunctness, which is not an issue in this case, refers to the labor organization's institutional death and inability to represent the employees. (*Arnaudo I*, *supra*, 40 ALRB No. 3, p. 11; see *Gerawan*, *supra*, 3 Cal.5th at p. 1159.)

expressed in the Agricultural Labor Relations Act. Thus, from the perspective of statutory construction, the exceptions were derived by the Board using inference and federal precedent.

We note the way the Board has used the label "abandonment" has been a source of some uncertainty as to the ways in which a union's representative status can be lost. In light of *Gerawan* and *Tri-Fanucchi*, it is now clear that the term "abandonment" is best used to describe a defense asserting the union's lengthy absence resulted in a forfeiture of its representative status. (See *Gerawan*, *supra*, 3 Cal.5th at p. 1152.) Defined as such, the abandonment defense is not recognized in California. (*Id*. at p. 1160.) Thus, abandonment is not an additional exception to the certified until decertified rule.[5]

### 3. *Disclaimer of Interest*

In this case, Grower relies on the disclaimer exception to the certified until decertified rule. Disclaimer involves a union "unwilling to represent the unit employees." (*Dole Fresh Fruit Co., Inc.* (1996) 22 ALRB No. 4, p. 11.) In *Arnaudo I*, *supra*, 40 ALRB No. 3, the Board noted that it had "never defined what constitutes a disclaimer of interest" under the Agricultural Labor Relations Act. (*Arnaudo I, supra,* at p. 13.) The Board partially filled the void by adopting four principles derived from precedent of the National Labor Relations Board (NLRB). First, the Board equated a disclaimer with an unwillingness to represent the bargaining unit. (*Id*. at p. 10, fn. 2 and accompanying text.) Second, the Board concluded that a disclaimer by a union must be clear and unequivocal and must be made in good faith. (*Id*. at p. 14.) Third, the union's conduct must not be inconsistent with the disclaimer. (*Ibid*.) Thus, inconsistent conduct can render a clear and

---

[5] Recognition of the abandonment defense would have contradicted the mandatory mediation statute, "the very purpose of [which] was to revive long-dormant relationships between agricultural employers and labor unions in order to facilitate the adoption of first collective bargaining agreements." (*Gerawan*, *supra*, 3 Cal.5th at p. 1158.)

14.

unequivocal disclaimer ineffective.**6** (*Ibid*.) Fourth, "the party asserting disclaimer of interest bears the burden of proving the disclaimer occurred." (*Ibid.*)

The foregoing principles are supported by federal court decisions applying the National Labor Relations Act (29 U.S.C. § 151 et seq.). For example, in *Dycus v. N.L.R.B.* (9th Cir. 1980) 615 F.2d 820 (*Dycus*), the court addressed the topic of disclaimers by stating:

> "An exclusive bargaining agent may avoid its statutory duty to bargain on behalf of the unit it represents by unequivocally and in good faith disclaiming further interest in representing the unit. [Citations.] A disclaimer will not be given effect if it is inconsistent with the union's conduct, [citation], nor if it is made for an improper purpose, such as the evasion of the terms and obligations of a collective bargaining agreement, [citation]." (*Id*. at p. 826; see *Corrugated Asbestos Contractors, Inc. v. NLRB* (5th Cir. 1972) 458 F.2d 683 [union's written disclaimer of representation of company's sheet metal workers was effective as it was made in good faith; dismissal of company's refusal to bargain charge against union was proper].)

We conclude the four principles set forth in *Arnaudo I* and described above, insofar as they go, are an accurate statement of the law of disclaimer of interest. The principles, however, do not completely define that area of law and, therefore, some uncertainty remains. For example, one unanswered question is to whom the disclaimer must be communicated to be effective. Is it to one or more of the employees, the employer, the Board, or a combination of the foregoing? Other questions concern the level and type of authority of the person disclaiming the union's interest in representing the bargaining unit. For example, must that person's authority be actual or can ostensible authority bind the union to a disclaimer? A related question is whether a disclaimer is binding only if made by someone in the upper levels of the union's hierarchy.

---

**6** The Board provided a further explanation of this principle by quoting an NLRB decision that stated: "'A union's "bare statement" of disclaimer is not sufficient to establish that it has abandoned its claim to representation if the surrounding circumstances justify an inference to the contrary.'" (*Arnaudo I*, *supra*, 40 ALRB No. 3, p. 14.)

15.

More fundamentally, the Board has not identified the conceptual foundation for disclaimers. For instance, is disclaimer a narrow type of waiver, which California law defines as an intentional relinquishment of a known right or privilege? "Under this definition, waiver always is based on intent and, thus, presents a question of fact." (*Smith v. Adventist Health System/West* (2010) 182 Cal.App.4th 729; see *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31.) Alternatively, does the existence of a disclaimer depend upon the objective meaning of the words—oral, written or a combination of the two—used to communicate the purported disclaimer?

The Board's resolution of the foregoing questions would benefit the public by increasing the certainty in the rules applicable to agricultural labor. The power of this court and our Supreme Court to answer these questions are limited because disclaimer was not created by the Agricultural Labor Relations Act, but was recognized by the Board. As such, it is for the Board, in the first instance, to identify the conceptual foundations for disclaimer and resolve the foregoing questions.

B.     Purported Disclaimer of Interest by the Union Was Not Unequivocal

*1.     Grower's Contentions*

Grower contends the Board erred when it decided there had been no express disclaimer of interest by the Union. Grower argues the administrative law judge committed legal error because (1) his reasoning was contrary to NLRB precedent, (2) he ignored part of the test for determining the existence of a disclaimer of interest, and (3) he rejected Grower's defense after misconstruing it as being based on the passage of time rather than statements by a representative of the Union. Grower also contends applicable NLRB precedent is consistent with a finding of an express disclaimer by the Union because, in Grower's view, the Union has engaged in conduct consistent with a disclaimer of interest in representing the employees.

Grower responded to arguments that its claims of error misapplied the burden of proof, and the substantial evidence standard of review by arguing the Board's conclusion that the Union did not make an effective disclaimer of interest was not supported by substantial evidence. Also, Grower reiterated its argument that NLRB precedent is consistent with the fact that the Union unequivocally disclaimed interest in representing Grower's employees.

Grower has raised a number of points. Our analysis of those points begins with whether Grower carried its burden of proving there was an unequivocal disclaimer of interest. We start there because some of Grower's claims of legal error are based on there being an unequivocal disclaimer.

### 2. *The Union Representative's Oral Statements*

Grower's contention that the Union unequivocally disclaimed interest in representing Grower's employees is based on the testimony of Steve Arnaudo about what was said at the last bargaining sessions held in the 1980's.[7] His testimony was presented in the following exchange.

"Q. Now I'm asking you specifically, what did the union negotiator say to you? What words?

"A. I recall these very vividly because they meant so much to me.

"Q. Okay.

---

[7] The date of the last session is uncertain. In response to leading questions from counsel, Arnaudo testified the last session occurred in October 1981. In contrast, the declaration he submitted to support the motion for summary judgment identified the last session as occurring in May 1982. Arnaudo's declaration stated he participated in dozens of face-to-face meetings through May 1982 and: "At what turned out to be the parties' final meeting in May of 1982, the [Union's] lead negotiator, Mac Lyons, told me that the Union 'no longer wanted anything to do with the Company,' or words substantially to that effect, and the negotiations came to a halt." For purposes of this proceeding, we need not describe how Arnaudo's testimony conflicts with the testimony and declarations of other witnesses.

17.

"A.     He says, 'You don't like unions, do you?'  I says, 'Yeah, I'm okay with unions.  I just don't like particularly your union – which was the [United Farm Workers] at this time – I says 'So I have no problem with unions, except you.'

"Q.     Okay.  And did he have any response to that statement by you?

"A.     Yeah, he says, I – 'We don't like you either.  We're through with you.'

"Q.     And did you respond back to that statement by the union –

"A.     I said, 'Well, great, so I'm over with you.'"

Without determining whether this exchange actually took place, the administrative law judge assumed the foregoing testimony accurately recounted the statements made by the Union representative and addressed whether the statement "We're through with you" constituted a clear and unequivocal disclaimer of interest.  The administrative law judge determined the statement, if made, was not a clear and unequivocal disclaimer of interest in representing Grower's employees:

> "First of all, it is unclear whether the statement referred to Arnaudo personally, or [the] business entities.  Secondly, the statement said nothing about not representing the employees.  More likely, the statement, if made, simply reflected the frustration of bargaining for four or five years, without being able to obtain the economic provisions the [Union] was seeking."

### 3.     Meaning of "Unequivocal"

In *Arnaudo I*, *supra*, 40 ALRB No. 3, the Board explicitly adopted NLRB precedent as the standard for what constitutes an effective disclaimer of interest and required the disclaimer to be clear and unequivocal.  However, the Board has not defined what the terms "clear" and "unequivocal" mean.  Consequently, before we apply the standard to the facts of this case, we define the meaning of "clear and unequivocal."

A dictionary defines "unequivocal" to mean "leaving no doubt" and lists "clear" and "unambiguous" as synonyms.  (Merriam Webster's Collegiate Dict. (10th ed. 1999) 1290.)  We will not use the phrase "leaving no doubt" to define clear and unequivocal because its use of the word "doubt" might cause it to be equated with the "beyond a reasonable doubt"

18.

burden of proof. Consequently, we conclude "clear and unequivocal" means unambiguous. The common or ordinary definition of "ambiguous" is "capable of being understood in two or more possible senses or ways." (Merriam Webster's Collegiate Dict., *supra*, p. 36.) This definition is consistent with the well-established legal definition, which states that "ambiguous" refers to language that is susceptible to more than one reasonable interpretation. (*Merced Irrigation Dist. v. Superior Court* (2017) 7 Cal.App.5th 916, 925.) Therefore, we conclude that "unequivocal" means susceptible to only one reasonable interpretation.

### 4. Question of Law or Fact?

Here, Grower has argued the determination that the purported disclaimer was not unequivocal is erroneous because it is not supported by substantial evidence. This argument implies that the existence of an unequivocal disclaimer presents a question of fact. We need not resolve whether the existence of an unequivocal waiver is a question of fact or a question of law. The outcome in this case is the same regardless of how the question is categorized. Under an independent or a substantial evidence standard of review, the statements Grower contends constituted a disclaimer of interest are ambiguous.

### 5. Ambiguity of the Word "You"

The pronoun "you" was used in the Union representative's statements "We don't like you either" and "We're through with you." Therefore, we consider whether the use of "you" in these statements rendered them ambiguous. "You" is defined as "the one or ones being addressed — used as the pronoun of the second person singular or plural in any grammatical relation except that of a possessive." (Merriam Webster's Collegiate Dict., *supra*, p. 1374.)

To simplify matters in a way that is not harmful to Grower, we assume "you" had the same meaning in both of the Union representative's statements. Under the evidence presented, there are at least five possible interpretations of "you"—two of which are

singular and three of which are plural.[8]  First, "you" could have referred solely to Steve Arnaudo as an individual.  Second, "you" could have been used to mean only Grower, the entity represented by Steve Arnaudo.  Third, "you" could have meant the two individuals representing Grower at that particular bargaining session—namely, Steve Arnaudo and Grower's attorney, Dante Nomellini.  Fourth, "you" could have been used to include Grower and Steve Arnaudo as an individual.  Fifth, "you" could have been used broadly to encompass Grower, Steve Arnaudo and Nomellini.

The five possibilities that arise under the evidence presented support the finding that the use of the term "you" caused the statement "We're through with you" to be ambiguous.  Stated another way, the words are reasonably susceptible to more than one interpretation when the only evidence considered relates to the persons present for the negotiation session and the entities they represented.

### 6.       Role of Surrounding Circumstances

The parties agree that surrounding circumstances have a role in determining whether the words used were unequivocal.  On the matter of timing, they disagree about whether the relevant circumstances include matters that happened *after* the purported disclaimer was made.

In accordance with the parties' agreement, we will evaluate the circumstances that existed at the time when the words purporting to be the disclaimer were spoken in determining whether an unequivocal disclaimer was made.  This evaluation is similar to that made by the administrative law judge, which considered these circumstances and whether they pointed to a particular meaning of the word "you."  As to the role of circumstances and events arising *after* the purported disclaimer was made (which include the 30 years of Union inactivity), we address that role in part II.D, *post*.

---

[8]       The meaning of the terms "you're" and "you" used in two picket signs was "ambiguous because the pronoun 'you' can be used to indicate either the second person singular or plural form."  (*Snyder v. Phelps* (4th Cir. 2009) 580 F.3d 206, 224.)

### 7. *Effect of Surrounding Circumstances on Ambiguity*

Grower contends "the statement of the Union representative to Steve Arnaudo should not have been ignored as ambiguous as to whom 'you' is referring to. Both individuals in the discussion were representatives of the entities participating in negotiations. 'You' obviously referred to Petitioners, as entities or parties to the negotiations. Otherwise, the statement would have no meaning whatsoever." We do not agree that the meaning of "you" is obvious. Rather, the statement is capable of various meanings depending upon how "you" is interpreted. Furthermore, substantial evidence supports a finding that multiple meanings are reasonably possible under the circumstances.

The fact that the statement was made during a bargaining session between the Union and Grower is a surrounding circumstance relevant to determining whether the statement was ambiguous or unequivocal. However, a more specific aspect of the circumstances surrounding the Union representative's statement is the conversation immediately preceding the statement. That conversation sets the stage for the Union representative's statement "We're through with you." The subject being discussed was Steve Arnaudo's *personal* feelings towards unions in general and towards the United Farm Workers of America in particular. Steve Arnaudo stated he had no problems with unions, except the United Farm Workers of America. The Union representative then mirrored this statement by replying, "We don't like you either." The use of the words "like" and "either" supports the factual inference that the statement responded directly to Steve Arnaudo's statement that "I just don't like particularly your union." In this context, it is reasonable to interpret "you" in the statement "We don't like you either" to refer to Steve Arnaudo as an individual and not his business, which is an entity that does not experience feelings? Furthermore, it is reasonable to infer the Union representative used "you" in the same sense when he continued speaking and said, "We're through with you." Thus, a trier of fact could reasonably interpret the

21.

representative's expression of dislike as relating to Steve Arnaudo personally and his statement "We're through with you" also as referring to Steve Arnaudo personally.[9]

Therefore, we conclude the circumstances surrounding the statement "We're through with you" support the finding that the term "you" was ambiguous, not unequivocal. The representative could have meant "you" to refer to either Steve Arnaudo personally or to Grower. Consequently, the evidence supports the finding that the Union representative's statements were not an unequivocal disclaimer of interest in representing Grower's employees.

### 8.    *Other Potential Ambiguities*

In view of the ambiguity of "you," we need not analyze whether the pronoun "we" created a further ambiguity in the statements. "We" is a first person plural pronoun that means "I and the rest of a group that includes me." (Merriam Webster's Collegiate Dict., *supra,* p. 1338.) In this context of the last bargaining session in the 1980's, "we" could be interpreted to refer to the feelings of the two Union negotiators as individuals. Alternatively, "we" could be interpreted more broadly to include the individual negotiators

---

[9]    The following is a reasonable possibility for the Union representative's underlying thought process: "You, Steve Arnaudo, have just admitted to being biased against the Union, which I presently interpret as meaning further negotiations with you as Grower's representative are pointless. Therefore, I intended to recommend the Union (1) cease bargaining with you, Steve Arnaudo, and (2) continue to represent the employees in the bargaining unit by pursuing charges against Grower for unfair labor practices. It is my present intention that after those charges are resolved, the Union will resume negotiations, hopefully with someone other than you representing Grower."

The prospect of the Union pursuing charges was addressed by the administrative law judge. He stated that Nomellini acknowledged that, after October 1981 (the date given by Nomellini as when negotiations ended), the Union alleged unfair labor practices by Grower that did not involve bad faith bargaining. However, the administrative law judge explicitly stated it was unnecessary for him to determine whether the Union pursued unfair labor practice allegations involving Grower *or* requested additional bargaining prior to 2012 because mere inactivity does not amount to a disclaimer and the purported disclaimer was not unequivocal.

and the Union, as a group. Adopting the former interpretation would mean those individuals (not the Union) were "through with" Steve Arnaudo or Grower.

Similarly, we need not analyze whether the phrase "through with" is ambiguous. The administrative law judge implied the phrase was not unequivocal when he stated that the Union representative's statement "said nothing about not representing the employees." The statement suggests that being "through with you" is not necessarily the same as being "through with" representing the employees in the bargaining unit.

### 9. Comparison to NLRB Decisions

As a test of whether our conclusion that the phrase "We're through with you" is ambiguous, we compare that result with the conclusions reached in NLRB decisions addressing the existence of a disclaimer.

We begin with *Miratti's Inc.* (1961) 132 NLRB 699 because it is a case where oral statements resulted in the NLRB finding a disclaimer had been made. (*Id*. at p. 701.) In that case, the union's recently appointed secretary-treasurer told the employer on July 25, 1960, that the union felt obligated to picket the employer and inform the general public that the employer did not have a union contract, but he did not want any misconceived ideas that the union was asking for a contract or claiming to represent the employees in any shape, way or form. (*Id*. at p. 700.) Part of the reason the union felt obligated to picket was that signs still hung in the employer's stores stating it had a union contract and union members were patronizing the stores in the belief the employer had a union contract. (*Ibid*.) On August 8, 1960, the union began picketing with signs stating the employer did not have a contract with a retail clerks' union. (*Id*. at p. 701.) At a subsequent hearing, "the Union again disclaimed any interest in representing the Employer's employees." (*Ibid*.)

The NLRB found the union's disclaimer was an effective one, stating: "In this case, the Union, once having disclaimed in unmistakable terms, engaged in no action inconsistent therewith. Its picketing is accounted for by uncontradicted testimony which shows that it

had no recognitional objective.  At the hearing, the Union repeated its disclaimer."
(*Miratti's Inc.*, *supra*, 132 NLRB at p. 701.)  The union's oral statements in *Miratti's Inc.*
are easily distinguished from the statements the administrative law judge assumed the union
representative made to Steve Arnaudo.  The secretary-treasurer's statements addressed the
union's position from two perspectives.  First, it was stated that the union was not asking to
represent the employees "'in any shape, way or form.'"  (*Ibid*.)  Second, the secretary-
treasurer reiterated that point by stating the union's only interest was to advertise the fact
that the employer had no contract with the union.  Furthermore, the disclaimer was repeated
in a formal setting.  In contrast, the statement "We're through with you" does not explicitly
address the role of the union in representing the employees, does not describe a limited
purpose of future actions (i.e., picketing) the union intends to take, and was not repeated in a
formal proceeding.

In the case of *Vaughan & Sons, Inc.* (1986) 281 NLRB 1082 involved oral statements
by a union business agent to a first-line supervisor of the employer.  The supervisor testified
the business agent said he "'had just come by to tell me that he enjoyed working with me,
and he probably wouldn't see me again.  He said we were pulling out.'"  (*Id*. at p. 1084.)
The administrative law judge found the union business agent's oral statement, "particularly
when considered in light of other events which were then taking place between [the
employer] and the Union, falls far short of being clear and unequivocal.  I find that the
Union did not disclaim or waive its right to bargain on behalf of unit employees."  (*Ibid*.)
The "other events" included subsequent conduct that was inconsistent with the purported
disclaimer.  Like the language at issue in the present case, the statement "we were pulling
out" does not mention representation of the employees.  Consequently, it is distinguishable
from the detailed statement addressing representation made in *Miratti's Inc.*

In *Conkle Funeral Home, Inc.* (1983) 266 NLRB 295, the employees were
dissatisfied with the contract negotiated by the union and refused to ratify the contract.  (*Id*.
at p. 296.)  After discussions between employees and union officials, the union official

24.

decided to accommodate the employee's wishes and disclaim the union's interest in representing the employees. (*Ibid*.) In a letter to all five of the bargaining unit employees, which was copied to the employer, the union stated:

> "Pursuant to our many phone conversations and after much soul searching on the part of this Local Union, please be advised effective this date Teamsters Local Union No. 193 no longer desires to represent the unit certified by the N.L.R.B. November 4, 1980 in case #25-RC-7534. [¶] I feel that this Local Union has done all that is possible to be done in securing a Collective Bargaining Agreement and that any further negotiations would be fruitless because of your unreasonably high demands." (*Ibid*.)

This letter, like the detailed statement made in *Miratti's Inc*., explicitly addresses representation of the employee and clearly states the union is relinquishing the right to continue representing the employees.

In sum, our conclusion that the statement "We're through with you" is ambiguous is consistent with the NLRB decisions addressing the existence of an unequivocal disclaimer.

D.      Relationship to the Purported Disclaimer

The parties disagree how conduct subsequent to the purported disclaimer fits into the analysis of whether an effective disclaimer of interest was made. Grower contends that subsequent conduct *consistent with* the disclaimer, such as the Union's 30 years of inactivity before it contacted Grower in August 2012, is evidence that must be weighed in determining whether there was an effective disclaimer of interest. The administrative law judge disagreed, stating subsequent conduct is considered only after a clear and unequivocal disclaimer has been established and then inconsistent conduct can be used to establish the disclaimer is not effective. He gave little consideration to subsequent conduct because he determined the purported disclaimer was not clear.

We conclude that the Board did not commit legal error in its treatment of the subsequent conduct of the Union. Under applicable federal precedent, an unequivocal "disclaimer will not be given effect if it is inconsistent with the union's conduct." (*Dycus*, *supra*, 615 F.2d at p. 826.) Grower inverts this principle and construes it to mean that an

25.

ambiguous disclaimer will be given effect if the union's subsequent conduct is consistent with a disclaimer of interest. Grower's view has not been adopted in federal precedent. Instead, federal precedent is limited to using inconsistent conduct to negate the existence of a disclaimer. (See *Ibid*.) Therefore, we conclude the Board properly applied existing precedent when it concluded that (1) subsequent inconsistent behavior renders an unequivocal disclaimer ineffective, but (2) subsequent consistent behavior does not convert an ambiguous disclaimer into an effective disclaimer.

Grower relies on *Vaughan & Sons, Inc.*, *supra*, 281 NLRB 1082, a case where the employer contended a statement by the union business agent that "we were pulling out" was a disclaimer of interest. (*Id*. at p. 1084.) The NLRB considered the statement in light of the other events that were taking place between the employer and the union and concluded the statement fell short of being clear and unequivocal disclaimer. (*Ibid*.) The NLRB rejected the employer's argument that the union's actions after the statement were consistent with a disclaimer as "patently absurd." (*Ibid*.) The subsequent conduct included a request by the union's counsel for information from the employer, a request that was confirmed in the employer's providing that information. (*Ibid*.) That request for information by the union was inconsistent with a disclaimer of interest in representing the bargaining unit. As a result, *Vaughan & Sons, Inc.* does not establish the principle that subsequent conduct *consistent with* a disclaimer is evidence relevant to deciding whether the alleged disclaimer was clear and unequivocal. Therefore, the Board's determination that subsequent conduct is relevant only to show an unequivocal disclaimer of interest is not effective does not contradict *Vaughan & Sons, Inc.* and accurately adheres to the principle about inconsistent conduct stated in *Dycus*, *supra*, 615 F.2d at page 826.

26.

III.     MAKE WHOLE RELIEF[*]

        A.      Overview

                1.      *Statutory Text and Purpose*

        Section 1160.3 provides that when the Board determines a person has engaged in an unfair labor practice, it "shall issue … an order requiring such person [1] to cease and desist from such unfair labor practice, [2] to take affirmative action, including reinstatement of employees with or without backpay, and *making employees whole, when the board deems such relief appropriate, for the loss of pay resulting from the employer's refusal to bargain*, and [3] to provide such other relief as will effectuate the policies of [the Agricultural Labor Relations Act.]"  (Italics added.)

        The purpose of the make whole remedy is to put the parties and the employees in the economic positions that they presumably would have occupied if the employer had not unlawfully refused to bargain.  (*F & P Growers Assn. v. Agricultural Labor Relations Bd.* (1985) 168 Cal.App.3d 667, 682 (*F & P Growers*).)  Thus, make-whole relief is designed to give agricultural workers the type of economic benefits they would have received if the parties had reached a timely agreement.  (*Tri-Fanucchi*, *supra*, 3 Cal.5th at p. 1167.)

                2.      *Standard for Exercising Discretion*

        The phrase "when the board deems such relief appropriate" in section 1160.3 clearly demonstrates that make-whole relief is discretionary in nature.  (*Tri-Fanucchi*, *supra*, 3 Cal.5th at p. 1168.)  In exercising that discretion, the Board must consider the facts and equities of each particular case and may not automatically impose make whole relief for every refusal to bargain.  (*J.R. Norton*, *supra*, at pp. 37–38.)

        The particular standard for deciding when make whole relief is appropriate was identified by the court in *F & P Growers* by quoting the following statement by the Board:

---

[*]      See footnote, *ante,* page 1.

27.

"'[W]e consider on a case-by-case basis the extent to which the public interest in the employer's position weighs against the harm done to the employees by its refusal to bargain. Unless litigation of the employer's position furthers the policies and purposes of the act, the employer, not the employees, should ultimately bear the financial risk of its choice to litigate rather than bargain.'" (*F & P Growers*, *supra*, 168 Cal.App.3d at p. 682; see *Tri-Fanucchi*, *supra*, 3 Cal.5th at p. 1170.)

Where the record demonstrates the Board did examine the facts and circumstances of the particular case and did not impose the make whole remedy automatically, the Board's order will be reviewed for an abuse of discretion. (*F & P Growers*, *supra*, 168 Cal.App.3d at p. 682.) That discretion, as *Tri-Fanucchi* makes clear, is broad and subject to limited judicial review. (*Tri-Fanucchi*, *supra*, 3 Cal.5th at p. 1168.) The Board is entitled to judicial deference because of its experience, specialized knowledge and expertise. (*Ibid*.) Moreover, selecting appropriate remedies requires the balancing of a range of policy considerations—a task the Legislature has committed to the Board, not the courts. (*Ibid*.)

B.    Decision to Impose Make Whole Relief

The April 2015 supplemental decision of the administrative law judge quoted language used in *J.R. Norton* and *F & P Growers*. Thus, the supplemental decision demonstrates he was aware of the legal standards governing make whole relief. Therefore, this is not a case where the administrative law judge or the Board committed legal error by automatically imposing make whole relief or otherwise failing to apply the correct legal standard.

The administrative law judge explicitly applied the standard from *F & P Growers* and considered whether the public interest in Grower's disclaimer defense outweighed the harm done to the employees by the refusal to bargain. The administrative law judge concluded the test for establishing a disclaimer of interest was relatively well settled, which reduced the public interest in Grower's pursuit of that issue. Based on section 1148 and the administrative law judge's perception that Grower presented no arguments as to why the federal precedents on the disclaimer issue were inapplicable, the administrative law judge

28.

concluded the public interest in the disclaimer issue litigated by Grower was outweighed by the employees' interest in collective bargaining.

The administrative law judge awarded make whole relief and determined the award should cover the period from September 27, 2012, until May 24, 2013, approximately eight months. The starting date was when Carrol (1) ignored the Union's requests for information and bargaining and (2) raised some "preliminary questions," including challenges to the Union's representative status. The closing date of the make-whole period was when the first mandatory mediation session took place. Thus, the make-whole period ended when the mandatory mediation process began.

A majority of the Board voted to affirm the administrative law judge's ruling, findings and conclusion in full. (*Arnaudo II*, *supra*, 41 ARLB No. 6, p. 2.) The majority also adopted the administrative law judge's recommended order, including the award of make whole relief. (*Ibid*.) The concurring and dissenting opinion set forth additional reasons for granting make whole relief.

C.    Our August 2017 Decision and *Tri-Fanucchi*

Our August 2017 decision followed the rationale contained in an earlier decision of this court—a decision that our Supreme Court overturned when it decided *Tri-Fanucchi*. In *Tri-Fanucchi*, the Supreme Court "reverse[d] [our] judgment reversing the Board's award of make-whole relief." (*Tri-Fanucchi*, *supra*, 3 Cal.5th at p. 1173.) The Supreme Court stated: "Accepting the Court of Appeal's rationale would thwart the Legislature's design to give *the Board*, not the courts, 'exclusive primary jurisdiction over all phases of the administration of the Act as regards unfair labor practices.'" (*Ibid*.) Stated another way, the Supreme Court determined the Board's remedial order awarding make-whole relief was an appropriate exercise of the Board's discretion under the Agricultural Labor Relations Act. (*Ibid*.)

D.       The Board Did Not Abuse Its Discretion in Awarding Make-Whole Relief

After the Supreme Court remanded the present matter for reconsideration in light of *Tri-Fanucchi*, the parties submitted supplemental briefing.  (Cal. Rules of Court, rule 8.200(b)(1).)  The briefs addressed whether *Tri-Fanucchi* requires us to affirm the Board's award of make-whole relief or, alternatively, can be distinguished from the present case. We conclude *Tri-Fanucchi* controls and affirm the award.

   *1.      Grower's Contentions*

Grower's supplemental opening brief contends (1) the administrative law judge and the Board did not consider the facts, circumstances, relationship of the parties, and equities in deciding to award make-whole relief and (2) its litigation position furthered the public interest and the policies and purposes of the Agricultural Labor Relations Act.  Grower's reply to the Board's supplemental brief reiterated the argument that the Board did not examine the particular facts or circumstances of this case when it determined the make-whole remedy was appropriate.  Specifically, Grower contends "there was no consideration of the employer's litigation position by the [Board] in its majority decision in this matter or the facts, circumstances and equities of this case."  Grower also contends the Board abused its discretion by deciding "to summarily award make-whole [relief] without considering the public interest of [Grower's] litigation position which clearly furthers the policies and purposes of the Act."

   *2.      Analysis*

We agree with Grower's contention that its litigation position served *a* public interest by furthering *some* of the policies and purposes of the Agricultural Labor Relations Act. Our agreement on this narrow point does not automatically lead to the conclusion that, on balance, the litigation position furthered the broader purposes of the act.  In *Tri-Fanucchi*, the Supreme Court concluded "that the Court of Appeal, in determining that Tri-Fanucchi's litigation 'plainly further the broader purposes of the ALRA,' improperly assumed the Board's remedial authority" and "did not give the Board's make-whole relief order any

30.

deference." (*Tri-Fanucchi*, *supra*, 3 Cal.5th at p. 1170.)  In short, a variety of policies and purposes are served by the Agricultural Labor Relations Act and, while litigation might further some of those policies and purposes, the delays that attend litigation hinders other policies and purposes.  It is the Board, not the courts, that considers on a case-by-case basis the extent to which the public interest in the employer's position weighs against the harm done to the employees by the refusal to bargain.  (*Tri-Fanucchi*, *supra*, at p. 1170.)

Based on the limited nature of judicial review and the arguments presented by Grower, our primary inquiry addresses whether the Board's decision was the product of an exercise of discretion that considered the relevant facts and circumstances.  We disagree with Grower's characterization of what the Board considered and did not consider when it adopted the administrative law judge's recommendation to award make-whole relief.  As described in part III.B., *ante*, the administrative law judge's decision explicitly applied the standard from *F & P Growers* and considered whether the public interest in Grower's disclaimer defense outweighed the harm done to the employees by the refusal to bargain.  Furthermore, the decision of the majority of the Board to adopt the administrative law judge's decision instead of drafting a separate document does not violate a statutory requirement or general principles regarding administrative decisionmaking.  Federal decisions "have long held that the Board need not restate the ALJ's opinion in its entirety if the ALJ's findings sufficiently inform the parties of the disposition of the arguments made." (*YMCA of Pike Peak Region, Inc. v. N.L.R.B.* (10th Cir. 1990) 914 F.2d 1442, 1449, fn. 4.) We conclude the same principle applies in California.  (See § 1148.)

In addition, the Board's decision need not explicitly address how the employer's litigation position relates to the employees' freedom of choice, right to vote for or against representation by a labor organization, and freedom of association.  The Agricultural Labor Relations Act "contains a comprehensive set of protections for employees who no longer wish to be represented by the certified labor union." (*Gerawan*, *supra*, 3 Cal.5th at p. 1158.) Thus, the employer's assertion of a disclaimer defense is not the statutorily recognized

31.

procedure for the protection of those rights and freedoms. Consequently, we conclude the Board did not abuse its discretion by adopting a decision that failed to explicitly address these employee rights and freedoms.

In summary, the Board did not abuse its discretion when it ordered make-whole relief in this case. As to Grower's contention that the Board erred in awarding make whole relief when mandatory mediation was underway, we reject that argument because (1) no statutory provision explicitly prevents such an award of make-whole relief, (2) the Board has broad discretion in determining when make-whole relief is appropriate, and (3) the Board's award in this case did not overlap with the mandatory mediation proceeding, but only provided relief for the eight-month period that the employer's failure to bargain delayed the start of mandatory mediation.

## DISPOSITION

The petition is denied. The Board's remand order in *Arnaudo I* (2014) 40 ALRB No. 3 is affirmed. The Board's order in *Arnaudo II* (2015) 41 ALRB No. 6 is affirmed.

Each party to this original writ proceeding shall bear its own costs. (Cal. Rules of Court, rule 8.493(a)(1)(B).)

_____
FRANSON, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
DETJEN, J.

32.